# SUPREME COURT.

· JAMES T. GERRY, Executor, &c., agt. WM. G. POST and others.

The *death* of a plaintiff, in a foreclosure case, before judgment of foreclosure and
    sale entered, renders the judgment entered in his name therein, and the pur-
    chaser's title under it *void*.
If the fact of the plaintiff's death were *doubtful*, and if it were only doubtful
    whether the purchaser's title in that case would be good, the purchaser would
    be entitled to be discharged.
The plaintiff was commander of the United States sloop of war Albany; he was
    at Aspinwall on 25th Sept., 1854, and then wrote to the navy department that

Gerry agt. Post and others.

he would leave the next day in his ship for New-York; he left accordingly the next day, and from that time to this (Nov. 1855) nothing has been heard of him or any of the officers or crew, or of the vessel. Eighteen days are full time for a passage from Aspinwall to New-York—fifty-eight days had elapsed between that time and the entry of the judgment.

*Held,* that the fact of the death of the plaintiff was almost certain, and in that event the law was clear, that the judgment entered on the 27th of Nov., 1854, was not valid, and the sale under it void.

*New-York Special Term, Nov.,* 1855.

MOTION to set aside judgment of foreclosure and sale of mortgaged premises—and that the purchaser be discharged.

DANIEL LORD, *for motion.*

WM. CURTIS NOYES, *opposed.*

MITCHELL, Justice. In July, 1849, a judgment of foreclosure and sale was entered in the above action, but judgment was afterwards opened, and a new judgment entered on the 27th of Nov., 1854, under which the mortgaged premises were sold to Isaac C. Delaplane on the 22d of December last. Notice of *lis pendens* was duly filed at or about the commencement of the action. Mr. Delaplane considers the title bad, and refuses to complete his purchase for two reasons : 1st. Post was owner of the fee, subject to the mortgage; he died, and by order of the surrogate, and in order to pay his debts, his title in the lands was sold, on the 23d of June, 1851, to Leah Gurnee, expressly subject to this mortgage, which was described as being under foreclosure in this court. No deed was executed to Leah Gurnee : neither she nor Thorne, the person appointed to sell, were substituted or added as parties to the action. The heirs of Post were parties.

2d. The plaintiff was commander of the United States sloop of war Albany : he was at Aspinwall on the 28th of September, 1854, and then wrote to the navy department that he would leave the next day in his ship for New-York : he left accordingly the next day, and from that time to this nothing has been heard of him, or of any of the officers or crew, or of the vessel. Eighteen days are full time for a passage from Aspinwall to

New-York; fifty-eight days had elapsed between that time and the entry of the judgment. The purchaser insists that this shows that the plaintiff was then dead, and so any judgment entered in his name was void.

If a tenant for life remove beyond sea, or absent himself in this state or elsewhere for seven years together, he is presumed to be dead. (1 R. S. 749, § 6.) That is a conclusion founded on mere absence, and not being heard of for that time, without reference to other circumstances. Other cases are left to depend on the various facts which may be connected with them. A vessel, when absent double the longest time of a voyage, may be presumed to be lost; and it follows, as a consequence, that it will also be inferred that all perished with her, if none of the passengers or crew are afterwards heard of.

In October of last year, we were shocked at the news of the loss of the Arctic, and of most of its crew and passengers. Still hopes were reasonably entertained that some individuals might have been picked up by vessels going to Europe, and until abundant opportunity had passed to hear from all such vessels, this hope was properly indulged; and the legal inference might have been, until that time was passed, that any individual not known to have perished was still alive. But when that last anchor of hope was gone, then the conclusion was, that those not heard from had perished—not when hope was last given up, but at the time when, from all circumstances, it was most probable that they perished—and would carry us back to the time when the ill-fated vessel and passengers and crew sank together. Thus, in earthly as in heavenly things, things invisible to human eye may be clearly seen, being understood by the things that are known.

In this case, nearly the same time has elapsed since the Albany left her port destined for this city, and that is the last that has been heard of her, or of any of her crew. The lapse of time makes the death of all on board of her as certain as anything not seen can be—and throws light on the question, when did that destruction occur? The reasonable answer is, at some time within the period usually assigned as the longest for such

Gerry agt. Post and others.

a voyage; and it might be, from the circumstances, that it should be considered as some time while, in her ordinary course, she would still be in the stormy Gulf of Mexico. Either way, it must have occurred before the judgment in this case.

At common law, death abated all actions, so as to put an end to them, and compel the representatives of the decedent to begin as if the first action had never been instituted. Various statutes were passed to cure this evil; but in all it will be found that the action was suspended by the death, and that no proceedings could be had in it until the new parties were brought in, except in two special cases. By the Revised Statutes, (2 *R. S.* 306–7, § 2,) if a plaintiff died after interlocutory, but before final judgment, the action did not abate, but still it was not to be continued in the name of the deceased—his executors or administrators were to sue out a *scire facias* to show cause why damages should not be assessed or recovered.

If the *defendant* died, nothing could be done until his executors or administrators were brought in. (*Id.* § 3.) If either party died after verdict, or a plea in confession, the court could enter final judgment in the names of the original parties, at any time within two terms after the death. But if a verdict were entered *after the death* of a party, although he were alive at the beginning of the circuit or term, the verdict was absolutely void. (*Id.* § 5.) In partition the death of either party did not terminate the suit; but still the representatives of such party were to be brought in. (*Id.* § 7.) If a female plaintiff married *after final judgment*, but before execution, a suggestion was to be entered on the record of the fact, and the execution to issue in the joint names of her and her husband. So in other cases, (§ 10 & 11,) the suit was not to abate, but still to be continued in the names of new parties. In chancery, also, the same statutes provided that no suit should abate when the cause of action continued, but still the new parties were to be brought in before the action could proceed. (2 *R. S.* 184, § 113, &c.) The Code (§ 121) is the same in effect.

Under our old system, where fictions were allowed to pre-

vail, and to have effect on the rights of parties, if a plaintiff died before execution issued against him, but after the commencement of the term, the court allowed the execution to be tested of the first day in term, and then having a *record* that it issued on that day, no allegation could be received against the record, and the execution was good at least as between the parties to it. (*Center* agt. *Billinghurst*, 1 *Cow*. 33.) The execution so issued would be good as against the personal estate, perhaps also under the fiction, as against the real estate. In *Woodcock* agt. *Bennett*, (1 *Cow*. 711,) there had been a judgment against two Bennetts; one died, and execution issued afterwards against both, and the lands of the deceased as well as the property of the survivor were sold—the whole execution was set aside: the sale was held to be *void* as to the lands of the deceased, and to give no title even to a *bona fide* purchaser; a distinction was made, and it was considered that the execution might have been good as to the survivor, as the judgment survived against him, and the *personal* property of the deceased was, *at law*, discharged by the death, and that of the survivor alone liable. It was also held that the judgment should have been revived by *scire facias* before execution could issue.

In *Bennett* agt. *Davis & Davis*, (3 *Cow*. 68,) one of the defendants died in April; judgment was entered on a bond and warrant of attorney in the following May, and it was set aside as irregular. In *Griswold* agt. *Stewart*, (4 *Cow*. 457,) Walton died 5th Oct., 1813, and judgment was entered against him by default at the *next* term in that month, and, on *scire facias* against the terre-tenants, they pleaded these facts, and it was held that the judgment was void, and no lien on the lands, and that no statute cured the effect of the death.

The principle of all these cases and statutes is, that the execution, or that which stands in place of it, must conform to the record, and must be by and against parties in existence, and that the record also must be by and against such parties.

If the fact of the plaintiff's death were doubtful, and if it were only doubtful whether the purchaser's title in that case would be good, the purchaser would be entitled to be discharged.

The fact of the death is almost certain, and in that event the law seems clear, that the judgment is not valid, and the sale is void.

The purchaser must be discharged from his purchase, and be paid the costs of this motion, $10, and the costs of examining the title, including a counsel fee on such examination—which are to be repaid to the plaintiff on a future sale of the property.