Argued February 7, affirmed February 21, 1928.

## MARY FLORENCE ARDEN v. UNITED ARTISANS.

(264 Pac. 373.)

Death—Finding That Holder of Benefit Certificate, not Heard of for More Than Seven Years, was Dead and had Died Before He Became Delinquent was Authorized (Or. L., § 799, subd. 26).

1. In beneficiary's action on benefit certificate, proof that insured was last heard of in Nevada October 1, 1914, and had not been heard of for more than seven years last past, *held* in view of presumption of Section 799, subdivision 26, Or. L., that person not heard from in seven years is dead, to authorize finding that he was dead and had died before he became delinquent.

Contracts—By-law Providing That Absence of Benefit Member Should not be Evidence of Death, nor Benefits Paid Without Conclusive Proof of Death, Held Void.

2. By-law of benefit society providing that absence or disappearance of benefit member from last known residence for any

---

1. Presumption of death from absence, see notes in 91 Am. Dec. 526; 92 Am. Dec. 704; 46 Am. Rep. 761; 104 Am. St. Rep. 198; L. R. A. 1915B, 729. See, also, 8 R. C. L. 708.

2. Validity of by-law preventing recovery upon presumption of death from seven years' absence, notes, L. R. A. 1915B, 793; L. R. A. 1917C, 1032; 17 A. L. R. 418; 36 A. L. R. 982.

length of time should not be evidence of his death, and no right should accrue under certificate to beneficiaries, nor should benefits be paid on certificate until conclusive proof was made of actual death, aside from presumption arising from absence *held* void as contravening statutes and common law.

**Insurance—Excluding By-law That Absence of Benefit Member Should not be Evidence of His Death Held Proper Where It was Passed Long After Insured's Death.**

3. In action by beneficiary on benefit certificate alleging that insured had not been heard of for more than seven years last past, excluding by-law of benefit society providing that absence or disappearance of benefit member should not be evidence of his death, and no right should accrue under benefit certificate, was proper where by-law was passed long after death of insured.

**Insurance—Excluding By-law Limiting Time of Proof of Death was Proper, It not Being in Existence at Date of Certificate nor Known to Insured.**

4. In action by beneficiary to recover on a benefit certificate alleging that insured had not been heard of for more than seven years last past, it was proper to exclude from evidence by-law of benefit society requiring proof of death to be made on blanks prescribed by the society and filed within six months from date of death, since by-law was not in existence at date of certificate, nor was time limit thereof mentioned in certificate, nor was it shown insured had notice thereof after its adoption.

**Insurance—By-law of Benefit Society, to be Effective, must be Reasonable.**

5. A by-law of a benefit society, to be effective, must be reasonable.

---

Death, 17 **C. J.**, p. 1168, n. 32, p. 1172, n. 70, p. 1173, n. 93, p. 1175, n. 13, p. 1179, n. 78.

Mutual Benefit Insurance, 29 **Cyc.**, p. 17, n. 49, p. 19, n. 50, p. 77, n. 57.

From Multnomah: Louis P. Hewitt, Judge.

Department 1.

This is an action to recover upon a beneficiary certificate issued upon the application of Thomas A.

---

3. Effect of changes of by-laws as against pre-existing members, see notes in 83 Am. St. Rep. 706; 1 Ann. Cas. 717; 7 Ann. Cas. 780; 8 Ann. Cas. 163; 10 Ann. Cas. 625; Ann. Cas. 1913C, 675; Ann. Cas. 1914D, 63; Ann. Cas. 1917B, 814; Ann. Cas. 1918D, 1140; Ann. Cas. 1918E, 414. See, also, 19 R. C. L. 1207.

5. Reasonableness of new by-law as implied consent to change of by-laws, see note in 8 L. R. A. (N. S.) 521. See, also, 19 R. C. L. 1195, 1204.

Arden, who was the husband of plaintiff, Mary Florence Arden, and in which her name appears as a beneficiary. The defendant, United Artisans, is a fraternal benefit society incorporated under the laws of Oregon. It appears from the complaint that in the year 1895, Thomas A. Arden, husband of plaintiff, entered into a contract of insurance with the defendant whereby defendant, in consideration that Thomas A. Arden should abide by the laws, rules and regulations of said defendant society, and pay the dues and assessments regularly levied against him, agreed to insure the life of said Thomas A. Arden in the sum of $2,000 in favor of Mrs. Thomas A. Arden, his wife; that on the seventh day of November, 1895, a certificate of insurance was issued to him by the defendant showing these facts. There were certain other provisions in the certificate which would reduce the payment upon it, when it became due, to the sum of $1,900, but these provisions are not important in this case.

It is alleged that Thomas A. Arden then began the performance of his contract and did all things and performed all conditions necessary by him to be done and performed for a great many years, to wit, until October 2, 1914, and that plaintiff on behalf of herself and Thomas A. Arden did all things and performed all the conditions necessary by her to be done and performed up to and including November 1, 1915. It is further alleged that about the —— day of October, 1914, plaintiff received a letter from said Thomas A. Arden dated October 1, 1914, and postmarked Reno, Nevada; that plaintiff has made diligent search and inquiry from the relatives and friends of said Thomas A. Arden, from the police department of Portland, Oregon, and from his last known place of residence where he was last known by

plaintiff to be alive and plaintiff has exhausted all sources of information which to her the circumstances suggested, or which were capable of investigation by plaintiff, and the agencies at her command; that plaintiff has received no word or tidings of or concerning said Thomas A. Arden for more than seven years last past, to wit, from the date upon which she received the letter from said Thomas A. Arden dated October 1, 1914, from Reno, Nevada, until the present time, and plaintiff has been informed and believes, and therefore alleges, that said Thomas A. Arden died on the second day of October, 1914.

Then follow the usual allegations of a request by plaintiff for the payment of the benefit certificate and an allegation to the effect that she has made proof of the death of Thomas A. Arden as required by defendant, and has submitted a written proof, a copy of which was marked exhibit "B" and attached to the complaint. A copy of the beneficiary certificate is also attached to the complaint.

Defendant answered admitting the fact as to the application of Thomas A. Arden, the fact of membership in the society, the issuing of the beneficiary certificate, and the payment of dues thereon up to the first day of December, 1915, and incorporated in its answer the application of Arden for such certificate, which, among other things, contains the following:

"I agree to make punctual payment of all dues and assessments for which I may become liable, and to conform in all respects to the laws, rules and usages of the society now in force, or which may hereafter be adopted by the Supreme Assembly."

Defendant also attached as exhibits to the answer the following sections of the by-laws:

"Sec. 72—Limit of Time for Proof. If the required proofs of death or disability by accident be

not made by the beneficiary entitled to benefits under the laws of the Society on the blanks prescribed by the Board of Directors and filed with the Supreme Secretary, within six calendar months from date of death or such disability of such member, then in such case, all claims whatsoever which such beneficiary might have had against the Society on account of such death, shall lapse and become absolutely null and void.''

''Sec. 73.—Action or Suit.  No action at law or suit in equity shall be commenced or maintained against this Society on account of the death or disability of any member, unless the same shall be commenced within one year next after the death or the beginning of the disability of the member.''

''Sec. 80.—Disappearance of Member.  The absence or disappearance of a benefit member of this Society from his last known or usual place of residence for any length of time, shall not be evidence of the death of such member, and no right shall accrue under the certificate of such member to any beneficiary or beneficiaries therein named or other person, nor shall any benefits be paid on such certificate until conclusive proof has been made of the actual death of such member aside from any presumption that might arise from his absence.''

Defendant further alleges that—

''Plaintiff has wholly failed to make proof of death under said certificate set forth in plaintiff's complaint as required by the by-laws of the defendant, and plaintiff has made no other or delivered no proof of death than that contained in exhibit 'B' attached to plaintiff's said complaint.''

A reply putting in issue all the affirmative defense urged by defendant was filed on the ninth day of February, 1926.  The action was tried before a jury, and a verdict rendered against the defendant for the

sum demanded in the complaint.    From this judgment
the defendant appeals.                        AFFIRMED.

For appellant there was a brief over the names of
*Mr. Russell E. Sewall* and *Mr. Russell W. Sewall,*
with oral arguments by *Mr. Guy C. H. Corliss* and
*Mr. W. M. Hudson.*

For respondent there was a brief over the names of
*Mr. M. N. Eben, Mr. R. M. Burley* and *Mr. J. N.
Hart,* with an oral argument by *Mr. Eben.*

McBRIDE, J.—The principal question argued by
defendant is as to the sufficiency of the proof of death
of Thomas A. Arden.    On behalf of plaintiff, there
was substantial testimony that Arden was a cook and
hotel worker by occupation, which it appears was in-
terspersed by ventures in mining; that after their
marriage they lived at various places and plaintiff's
husband pursued the business of his vocation, cook-
ing in restaurants and other business of that char-
acter; that after having obtained this insurance, which
was while he resided in Portland, he and his family
went to Astoria; that in 1898 he went to the Klondike
during the gold rush and while in that region and
Alaska he made two visits to his wife at Astoria dur-
ing the three years of his absence, and that on return-
ing home from Alaska he remained a short time and
then went to Nevada; that for over thirteen years
he lived in Nevada working at various locations and
apparently was somewhat interested in mining ven-
tures.    During these thirteen years he wrote fre-
quently to his wife (she states once every two weeks)
and it appears from the letters, some of which she had

preserved, that nearly every letter contained a considerable amount of money, usually $50 and in at least one instance $100. Her last two or three remittances were small amounts and she excepts from her statement in regard to the regularity of his letters and remittances about eight weeks, and that at one time during that period he was sick with the rheumatism. It also appears that during his stay in Nevada, he visited his family twice in Portland. During the last year of his correspondence, in one of his letters he wrote of being troubled with rheumatism in his foot so that he was unable to work regularly, and in another letter wrote of his hand being in such a condition that he was unable to secure permanent employment as a cook. All of the letters, and there were a dozen or more, spoke in kindly and affectionate terms of his love and affection for his wife and children. His wife testified that the utmost harmony and affection prevailed between them, and that there was no disagreement or estrangement of any kind.

On October 1, 1914, he wrote the following letter dated at Reno, Nevada:

"My dear wife:

"I got 3 days work during fair week for which I received $12.00. Am sending 10—It seems almost impossible to get anything here. I am trying to get some one to stake me to a small lunch counter & in the meantime trying to get a position of any kind. Am feeling pretty good at present. I dont know just where I may go. So you had better wait till you hear from me.

"Aff—your husband

"TOM ARDEN."

She testified that she answered this letter in about two weeks after she received it and that it subse-

quently came back to her undelivered; that she wrote
to the postmaster at Reno for information and he
replied that he was not permitted to give out informa-
tion of the character she desired and that when she
wrote to the chief of police of Reno she received an
answer that he knew nothing of her husband. She
then wrote to the chief of police of San Francisco
trying to identify him there, but the authorities were
unable to locate him. She then went to the chief of
police of Portland and gave him the description of
her husband and told him the circumstances of the
case, and he, without expense to her, printed cir-
culars which he told her he would send out to the
various places she had mentioned in an endeavor to
find Arden, but nothing came of them. Her pastor
was consulted and suggested advertising in the Cali-
fornia newspapers, but, owing to her poverty, she
was unable to resort to this expedient. She informed
the supreme secretary of the order of her husband's
disappearance and his suggestion was to write to the
chief of police of Reno, which she did without receiv-
ing any action. From that time until the commence-
ment of this action in 1925, she has had no tidings of
her husband and, being satisfied in her own mind
of his decease, she brought this action.

A motion for a directed verdict was made by the
defendant at the trial upon the ground that there was
no sufficient proof of the death of Arden, which was
overruled.

1. The main contention here is first, whether there
is any proof of the death of Arden during the period
within which his assessments were paid; and second,
as to the validity of the by-laws heretofore quoted,
which were offered in evidence on the trial and re-
jected upon the objection of counsel for plaintiff. We

are of the opinion that there was sufficient proof made by plaintiff of the death of her husband to take the case to the jury.

Section 799, subdivision 26, Or. L., provides that it shall be presumed "that a person not heard from in seven years is dead."

There was testimony to go to the jury as to the sufficiency of effort made by the plaintiff to get news of her husband, and it is clear that he has not been heard from for more than seven years. So the presumption, though disputable in its nature, stands until overcome that Arden was dead at some time between the 2d of October, 1915, and the making of the claim in this action. But there is another presumption that, having been alive on the first of October, he might have been alive every day until the seven years had expired, unless there is some testimony tending to indicate an approximately earlier date of death. We think the testimony already recited was sufficient for that purpose.

Here is a man who is shown to be an affectionate husband and father; writing regularly and affectionately to his family; sending them money with fair regularity, and apparently as often as he was able to earn it; a man, according to the testimony of his relatives, of good habits and fair character, who, after corresponding regularly with his family suddenly vanishes as if the earth had swallowed him. His occupation was such that he would not cut an important figure in the community in case of his death, and especially at a place where he had been only a short time as indicated in his correspondence from Reno. So far as it appears from the testimony, he was not a member of any fraternal order in Nevada that would be likely to take an interest in his sickness

or death. The one order of which he was a member was the Artisans, an Oregon association, and there is no evidence produced tending to indicate that its activities extended to the state of Nevada. So the probability of getting word through connection with fraternal organizations is not shown to exist in this case. It was for the jury to say whether it was probable that a man of the character shown in this testimony would desert his wife and children and suddenly refrain from communicating with them or from rendering them any assistance. While there is no evidence that he was in any immediate peril, there is evidence that he had been a great sufferer from rheumatism from time to time and shortly before his disappearance; and taking this into consideration with the other circumstances, his habits and general character, and the affection he displayed towards his family, would seem to indicate that it was more likely that he died suddenly than that he had basely forsaken his wife and children.

Counsel for defendant lays great stress upon the fact that he was absent from home a great deal and argued from that fact the probability that not caring greatly for his family, he concluded to desert them. While it is true that he was away a great deal, it would seem that it arose from the necessity of getting somewhere where he could make a living for them. In the history of this family we have "the short and simple annals of the poor." He had to go where he could ply his humble occupation with the most success and where the chances of earning a living for his family seemed the best. His wife remained at home and did what she could to keep the family together, and his separation from her, seemingly under the pressure of circumstances, is quite as consistent with

the theory of his affection for her as is the opposite theory.

We think the evidence would justify the jury in concluding that the sudden cessation of all intercourse or correspondence with Arden's family was due to his death and while there is room for the opposite theory, the jury, and not the court, were the judges under the circumstances. So we believe that their finding, that Arden was dead and that he died before he became delinquent, is a verdict which they had a legal right to render under the circumstances.

2. We now come to the question of the efficiency of by-law No. 80 quoted herein as a defense. A great majority of the courts have held that such a by-law contravened both the statute and the common law and is void. It is true that there are respectable authorities to the contrary; the leading case, *Steen* v. *Modern Woodmen of America,* 296 Ill. 104 (129 N. E. 546, 17 A. L. R. 406), holds the opposite doctrine. In an exhaustive annotation to this case in the American Law Reports, all the authorities then extant upon that question are cited. We have examined them and it is unnecessary to cite them here. The great weight of authority is against the position taken in that case and to the effect that such a provision, if contravening a statute, is void; and that in the absence of a statute, it is void as contravening a common law. *Cobble* v. *Royal Neighbors* (Mo. App.), 219 S. W. 118 is cited in the case of *Steen* v. *Modern Woodmen of America, supra,* as sustaining its position, but this case was later taken to the Supreme Court of Missouri—*Cobble* v. *Royal Neighbors,* 291 Mo. 125 (236 S. W. 306, 21 A. L. R. 1346)—and there reversed, the court holding very distinctly that a

by-law of the character indicated is void. We hold Section 80 of the by-laws void.

3, 4. The court was correct in its ruling in excluding the by-laws from the evidence and especially in this case with respect to by-law No. 80, which was passed long after the death of Arden. Section 72 of the by-laws was not in existence when Arden was insured. No such time limit is mentioned in the beneficiary certificate and it is not shown that Arden had any notice or knowledge of its existence after its adoption; and it is certain that his beneficiary, not being a member of the association, had no knowledge thereof.

5. A by-law to be effective must be reasonable and, while the one in question may be reasonable as applied to cases where the certificate was issued subsequent to its adoption or possibly to cases where the fact of its adoption is known to the insured at or about the time thereof, it is clearly unreasonable as applied to a case of a member long absent from the jurisdiction, which is the case here where it is improbable that he ever knew of its existence, and, where in the absence of such knowledge, he or his beneficiary went on for years paying his assessments without knowing that a new term had been added to his contract. The same may be said as to by-law No. 72: *Rosenstein* v. *Court of Honor,* 122 Minn. 310 (142 N. E. 331).

Certain instructions were requested, but so far as we deem them applicable, they were sufficiently covered by the instructions given by the court, which we think made it clear to the jury that the plaintiff must establish by proof the fact that the insured died prior to December 1, 1915.

The temptation to discuss these matters more fully is great, but in consideration of the volume of business pressing upon this court, we shall have to be content with merely stating our conclusions.

The judgment of the court below is affirmed.

AFFIRMED.

RAND, C. J., and BROWN and ROSSMAN, JJ., concur.