Argued May 17; reversed and remanded July 6, 1949

IN RE ESTATE OF THORNBERG
PEARSON, STATE TREASURER *v.* COULTER ET AL.
208 P. 2d 349

572

*Dean H. Dickinson,* assistant Attorney General, of Portland, argued the cause for Appellant. With him on the brief were George H. Neuner, Attorney General, of Salem, and Irving D. Brown, of Salem.

*James R. Schick,* of Forest Grove, argued the cause for Respondents. With him on the brief was Joseph R. McCready, of Forest Grove.

Before LUSK, Chief Justice, and BRAND, ROSSMAN and HAY, Justices.

LUSK, C. J.

This is an appeal by the state treasurer from an order of the Circuit Court for Washington County overruling the treasurer's objections to a determination by the county court of the inheritance tax in the estate of D. A. Thornburg, deceased, and ordering that the said inheritance tax be and remain fixed in the amount determined by the county court.

We adopt as our own the statement of the case in appellant's brief. It has not been objected to in any particular by counsel for the respondents except that

they take a somewhat different view of the nature of the question for decision. The statement follows:

"The case turns upon a question of fact which may be thus stated:

"Did Theodore R. Thornburg, son and legatee of D. A. Thornburg, predecease his father?

"D. A. Thornburg died April 28, 1945, leaving an estate of the net taxable value of $36,633.95. His will bequeaths his entire net estate to his son, Theodore R. Thornburg, provided, however, that if the said son should not survive the testator the estate should pass to the children of the son living at the testator's death, or if the son should leave no children then surviving, the estate should pass to A. Losina Thornburg, widow of his son. The son had no children. If the testator's son survived his father and took the bequest the correct inheritance tax is $324.51 as determined by the County Court; but if the son did not survive the testator the estate passed to testator's daughter-in-law, and additional inheritance tax of $5,416.79 is owing under the third Paragraph of Rates, Section 20-105 O. C. L. A., the total inheritance tax being $5,741.30. * * * Theodore R. Thornburg was a Lieutenant in the Naval Air Force. In October, 1944, during the battle of the Philippines, he was attached as co-pilot to a patrol bombing squadron operating from the Island of Morotai, Moluccas Islands, in the East Indies. On the morning of October 28, 1944, exactly six months before his father's death, his plane departed on a combat patrol to cover an area off Leyte Gulf in the Philippine Islands. The other two planes of the flight returned to base that afternoon, but Thornburg's plane was never heard from again and no trace of the plane or crew has even been found. The Navy Department listed Thornburg as missing in action October 28, 1944, and carried him on its rolls in that status until October 29, 1945, when pursuant to the War Pay and Allowances Act, Section 5, Public Law 490, 77th Congress, his death

was officially declared and his pay and allowances settled accordingly."

Appellant takes the position that the evidence, which will be set out in more detail later, compels the conclusion that Lieutenant Thornburg met his death at the time that he disappeared. Respondents say that the issue is "What date shall be accepted as legally controlling for purposes of the affairs and estate of Theodore R. Thornburg?" and argue that the controlling evidence is the finding of the Navy Department, made pursuant to authority of an act of Congress, that Lieutenant Thornburg was presumptively dead on October 29, 1945, a year and a day after he disappeared. We shall consider the respondents' contention first.

It is provided in part by § 2 of the War Pay and Allowances Act of 1942, Public Law 490, 77th Congress (§ 1002, 50 U. S. C. A., War Appendix):

"Any person who is in active service and who is officially determined to be absent in a status of missing, missing in action, interned in a neutral country, captured by an enemy, beleagured or besieged shall, for the period he is officially carried or determined to be in any such status, be entitled to receive or to have credited to his account the same pay and allowances to which he was entitled at the beginning of such period of absence or may become entitled thereafter, and entitlement to pay and allowances shall terminate upon the date of receipt by the department concerned of evidence that the person is dead or upon the date of death prescribed or determined under provisions of section 5 of this Act".

Section 5 of the same act (§ 1005, 50 U. S. C. A., War Appendix) provides:

"When the twelve months' period from date of commencement of absence is about to expire in any

case of a person missing or missing in action and no official report of death or of being a prisoner or of being interned has been received, the head of the department concerned shall cause a full review of the case to be made. Following such review and when the twelve months' absence shall have expired, or following any subsequent review of the case which shall be made whenever warranted by information received or other circumstances, the head of the department concerned is authorized to direct the continuance of the person's missing status, if the person may reasonably be presumed to be living, or is authorized to make a finding of death. When a finding of death is made it shall include the date upon which death shall be presumed to have occurred for the purposes of termination of crediting pay and allowances, settlements of accounts, and payments of death gratuities and such date shall be the day following the day of expiration of an absence of twelve months, or in cases in which the missing status shall have been continued as hereinbefore authorized, a day to be determined by the head of the department.''

Section 1, Ch. 203, Oregon Laws, 1947, provides:

''Relevant official records and files of the war department or navy department of the United States shall be accorded prima facie probative value in evidence in any proceeding hereafter pending before any court or agency in this state in which there is an issue of fact as to the death or disappearance of any person while serving in or with the armed forces of the United States.''

■ Under § 5 of the Federal act ''the head of the department concerned'' is authorized, after a person has been missing for a period of twelve months ''and no official report of death or of being a prisoner or of being interned has been received'', to determine whether it may reasonably be presumed that the person is still

living, and, if the determination of that question is in the negative, to make a finding of death, the date of which ''shall be the day following the day of expiration of an absence of twelve months''. This finding of presumptive death, however, is only ''for the purposes of termination of crediting pay and allowances, settlements of accounts, and payments of death gratuities''. This view of the meaning of the statute is confirmed, if it needed any confirmation, by the certificate of death issued by the Bureau of Medicine and Surgery, Navy Department—a copy of which is in evidence—which recites ''the date of death *for administrative purposes* within the naval service was determined to be 29 October 1945.'' (Italics added.) We think that it is clear that by this enactment Congress had no intention to authorize a finding of presumptive death for any other purpose than those specified in the statute, or to attempt to control the decisions of the courts in litigation not relevant to the congressional purpose.

It is conceded in the respondents' brief that ''the Federal statute, as such, is not binding in the courts of this state''. But it is argued in substance that it should be treated as though it were binding in order to avoid conflict with the Federal determination as well as uncertainties which otherwise, it is asserted, would arise in the settlement of decedents' estates. This is an argument of policy with which this court could have no concern. The fact is that the Oregon statute above quoted, which is relied on as supporting the respondents' contention, announces a contrary policy. The legislature did not provide that the findings of the Federal agency should be conclusive in the courts of this state on a question of death or disappearance, but rather that the relevant official records ''shall be ac-

corded prima facie probative value in evidence'' on such a question. This, of course, is quite a different thing. Prima facie evidence ''is such evidence as in judgment of law is sufficient to establish the fact, and, if not refuted, remains sufficient for the purpose.'' *Millar v. Semler*, 137 Or. 610, 613, 2 P. (2d) 233, 3 P. (2d) 987. If the legislature had intended that the Federal finding should be accepted as conclusive by the courts it would not have passed that kind of a statute.

It is said in respondents' brief: ''Appellant is in the position of attacking a conclusion reached by a military department by substituting a different conclusion founded solely upon the facts and information secured by that department. This information was not sufficient in the opinion of the military agency to warrant a finding of death at or about October 28, 1944.'' This argument, we think, is based upon an erroneous interpretation of the Federal statute, which clearly implies that all missing persons are presumed to be alive for twelve months from the date of commencement of their absence. Upon the expiration of that period, ''the head of the department concerned is authorized to direct the continuance of the person's missing status, if the person may reasonably be presumed to be living, or is authorized to make a finding of death.'' The only discretion vested in the administrative official is to continue the missing status if in his judgment the missing person ''may reasonably be presumed to be living''. The only time that he is authorized to make such a decision is after the expiration of the twelve months' period. If he concludes that there is no such presumption he is not authorized to determine when the person died; the date is fixed by the act. It is an arbitrary date, having no relevance to the

facts of a particular case, but a date selected by Congress for all similar cases, evidently because it was deemed expedient that there should be a uniform period of time in all such cases for determining the obligations of the government to the members of the armed services and their dependents. In the vast business of the war the difficulties attendant on an attempt to decide the date of death in each individual instance suggests at least one reason for the policy which Congress adopted.

■ Under this view of the applicable statutes, we think that it is the court's duty, as in any other case at common law, to determine as near as may be the date of the death of Lieutenant Thornburg. The precise question is whether the prima facie effect which we must accord to the Federal determination, has been overcome by the other evidence in the case.

The evidence consists entirely of documents received under a stipulation of the parties.

One of these is a photostat of a letter from the late James Forrestal, Secretary of the Navy, under date of December, 1945, addressed to Mr. F. F. Faville, Des Moines, Iowa, an uncle of the missing flier. We set out this letter in full:

"Your nephew, Lieutenant (junior grade) Theodore Roosevelt Thornburg, United States Naval Reserve, has been carried on the official records of the Navy Department in the status of missing in action as of 28 October 1944. The plane your nephew was aboard, attached to Patrol Bombing Squadron ONE HUNDRED FORTY-SIX, departed from Morotai, Moluccas Islands, Netherlands East Indies, in the early morning of 28 October 1944, on a combat area patrol off Leyte Gulf, in the Philippine Islands. According to information which has been received by the Navy Department, a two-engine

plane operating in the vicinity of Leyte Gulf on 28 October 1944, was mistakenly identified as a Japanese aircraft and shot down by a group of carrier escort pilots. This plane crashed into the sea. No one was seen to bail out and all of the occupants were believed to have been killed. Inasmuch as the plane which was shot down was identified as being of the same type as the one which your nephew was scheduled to fly, the possibility is suggested that the plane erroneously identified as Japanese was, in fact, the plane your nephew was aboard.

"In view of the strong probability that the plane in which your nephew was flying crashed into the sea as a result of friendly aircraft fire, and that he lost his life as a result thereof, because no official nor unconfirmed reports have been received that he survived, because his name has not appeared on any lists or reports of personnel liberated from Japanese prisoner of war camps, and in view of the length of time that has elapsed since he was reported missing in action, I am reluctantly forced to the conclusion that he is deceased. In compliance with Section 5 of Public Law 490, 77th Congress, as amended, the death of your nephew is, for the purposes of termination of pay and allowances, settlement of accounts, and payment of death gratuities, presumed to have occurred on 29 October 1945, which is the day following the expiration of twelve months in the missing status.

"I know what little solace the formal and written word can be to help meet the burden of your loss, but in spite of that knowledge, I cannot refrain from saying very simply, that I am sorry. It is hoped that you may find comfort in the thought that your nephew gave his life for his country, upholding the highest traditions of the Navy."

The following additional facts appear: The plane of which Lieutenant Thornburg was co-pilot was one of three Vega Ventura bombers which set out on the

mission. The other members of the crew were a pilot, navigator, radio man, turret gunman and tail gunner. The planes took off from the base at Morotai at 8:00 A. M. At 9:30 A. M. the base received a radio message from Thornburg's plane stating that they were entering an area of unfavorable weather. The other two planes returned to the base at 4:00 P. M. of the same day. Thornburg's plane did not return and search planes were sent out. The weather was bad and they found nothing. The next day a typhoon swept the region. No traces of the missing plane or its crew was ever found.

The certificate of death above referred to gives as the cause of death "Killed in action, details not known." The certificate further recites, "This officer was officially reported to be MISSING IN ACTION as of 28 October 1944, when the plane in which he was flying, failed to return from a combat area patrol in the vicinity of the Phillippine Islands."

Lieutenant Thornburg was in the habit of writing to his wife every day. The last letter which she ever received from him was dated October 27, 1944, the day before he disappeared.

■■ In this state the common law disputable presumption that a person not heard from in seven years is dead has been enacted into statute. § 2-407 (26), O. C. L. A. It is generally held, however, that when one who is last seen in a state of imminent peril, that might presumably result in his death, is never again heard from, although diligent search for him is made, an inference of immediate death may justly be drawn. *Fidelity Mutual Life Association v. Mettler,* 185 U. S. 308, 46 L. ed. 922, 22 S. Ct. 662; *Davie v. Briggs,* 97 U. S. 628, 24 L. ed. 1088; *Brownlee v. Mutual Benefit*

*Health & Accident Association,* (C. C. A. 9th) 29 F. (2d) 71; *Northwestern Mutual Life Insurance Co. v. Stevens,* (C. C. A. 8th) 71 Fed. 258; *Rose v. United States,* 4 F. Supp. 340; *Hanzes v. Flavio,* 234 Mass. 320, 125 N. E. 612; 16 Am. Jur., Death, 25, § 27; 25 C. J. S., Death, 1068, § 10. See annotations, 34 A. L. R. 1394, 61 A. L. R. 1330. This court, in common with many others, has gone further and held that even though the missing person may not have been exposed to an imminent peril, the circumstances may be such as to justify a finding of death at or about the time of his disappearance. *Hefford v. Metropolitan Life Insurance Co.,* 173 Or. 353, 144 P. (2d) 695; *Arden v. United Artisans,* 124 Or. 225, 264 P. 373. And, as stated in 16 Am. Jur., Death, 25, § 28, "where a vessel sets out on a voyage and neither the vessel nor those who went in her are afterward heard of, the presumption arises, after the utmost limit of time for her to have completed the voyage and for news of her arrival at any commercial port of the world to have been received, that the vessel has been lost and that all on board have perished. * * * The presumption of death from absence of tidings of the vessel on which the absentee sailed is strengthened by proof of a storm to which the vessel probably was exposed." See, *Johnson v. Merithew,* 80 Me. 111, 115, 13 Atl. 132, 6 Am. St. Rep. 162; annotation, Ann. Cas. 1916 B 70; annotation, 104 Am. St. Rep. 206.

That Lieutenant Thornburg was exposed to imminent peril at the time that he disappeared cannot be questioned. He was flying in a land-based plane over vast and lonely stretches of ocean seeking combat with the enemy. His plane ran into bad weather. The other two planes, the companions of his mission,

returned to their base. His plane failed to return. Search planes were sent out, but neither he nor any of the other members of his crew have been since heard of nor has any trace of the plane been found. The day after his disappearance a typhoon swept the region. Secretary Forrestal was of the opinion that there was "strong probability" that the plane in which Thornburg was flying "crashed into the sea as a result of friendly aircraft fire, and that he lost his life as a result thereof."

The case presents also a clear analogy to that of a vessel which fails to complete its voyage and is never again heard of.

The question, as in other civil cases, is one of probabilities.

"The law does not require demonstration; that is, such a degree of proof as, excluding possibility of error, produces absolute certainty, because such proof is rarely possible. Moral certainty only is required, or that degree of proof which produces conviction in an unprejudiced mind." § 2-201, O. C. L. A.

■ Presumptions founded on a reasonable probability must prevail as against mere possibilities, otherwise the conclusion could never be arrived at that a man was dead until the natural limit of human life had been reached. 104 Am. St. Rep. 207; *Merritt v. Thompson,* 1 Hilt. 550; *Gerry v. Post,* 13 How. Pr. 118; *King v. Paddock,* 18 Johns. Ch. 141; *Oppenheim v. Wolf,* 3 Sand. Ch. 571. And see *Hefford v. Metropolitan Life Insurance Co.,* supra, 173 Or. 363.

■ A stronger case to support a conclusion that disappearance and death were contemporaneous or practically so, it would be difficult to imagine. Where a

plane traveling over the ocean fails to reach its destination and no trace of it or its occupants is found after, sometimes, weeks of search, it is usually concluded, and with justice, that its occupants have perished even though they are not known to have encountered any special or extraordinary peril. Here, in addition to ordinary hazards, we have a flight the purpose of which was to meet an enemy in mortal combat, a possibility that the plane was shot down by one of our own flyers, and a typhoon. In our opinion the evidence points with almost irresistible force to the conclusion that Lieutenant Thornburg died on or about October 28, 1944.

The only case cited in the briefs construing the provisions of the so-called Federal Missing Persons Act, the popular name for the War Pay and Allowance Act of 1942, is Stone's Estate, 58 Pa. D. & C. 154, a decision of the Pennsylvania Orphans Court cited by the respondent. We find nothing in this decision which is in conflict with what we have here determined. The question in that case was whether the estate of a missing member of the Air Corps of the United States Army was liable for the payment of an inheritance tax on moneys credited to him by the government representing an accumulation of pay and allowances earned during the period between the date he was missing in action and the date of his presumed death. The court held that the tax could be collected. It gave effect to the finding of death by the War Department, which was made prima facie evidence of the fact of death by a Pennsylvania statute, and held that "the presumption of death has not been refuted by any credible evidence which rebuts the prima facie evidence of the certification of presumed death."

If the attempt in this case were to persuade the court to hold that Lieutenant Thornburg was not dead a year and a day after his disappearance, we would have the same question which was before the Pennsylvania court and would decide it the same way. But the question here is whether the arbitrary presumptive date of death, fixed by Congress and found by the Navy Department, must give way to facts which to a reasonable mind establish with convincing force an actual earlier date of death. Conceding to the Department's finding the full force to which it is entitled, we think its prima facie effect has been overcome.

We have assumed in this opinion that § 1, Ch. 203, Oregon Laws, 1947, gives prima facie effect for all purposes, rather than for the limited purposes of the Federal Act, to the finding of death by the Department. There may be room for doubt as to the correctness of this assumption, but in the view we take of the case we have thought discussion of the question to be unnecessary.

The decree is reversed, and the cause is remanded to the Circuit Court with instructions to sustain the State Treasurer's objections to determination of inheritance tax herein and to fix said tax in accordance with the claim of the State Treasurer.