Argued July 23, reversed and remanded August 6, 1973

STATE OF OREGON, *Respondent, v.* ALFRED
CHARLES OFFORD, JR. (No. 73-17-C),
*Appellant.*
512 P2d 1375

*J. Marvin Kuhn,* Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

*Richard K. Lane,* Deputy District Attorney, Grants Pass, argued the cause for respondent. With him on the brief was Robert M. Burrows, District Attorney, Grants Pass.

Before Schwab, Chief Judge, and Langtry and Thornton, Judges.

LANGTRY, J.

Defendant appeals his jury trial conviction on a charge of criminal activity in drugs (ORS 167.207). His sole assignment of error challenges the propriety of certain instructions given to the jury from which exceptions were taken.

Defendant and a companion had been arrested on December 31, 1972 for soliciting a ride while standing in a roadway (ORS 483.218). When the arresting officers conducted a search of defendant's person for weapons, they discovered a plastic prescription bottle in defendant's right front pocket. The bottle contained

33 purplish-blue tablets, most of which were individually wrapped in aluminum foil. There was no prescription label attached to the bottle. The arresting officers suspected the tablets contained LSD, informed defendant he was under arrest on the drug charge and read him his *Miranda*[①] rights.

At trial it was stipulated that the tablets found in the bottle in defendant's pocket contained LSD, and the sole issue was whether defendant knew that the prescription bottle contained LSD. Defendant testified that his companion had handed him the bottle shortly before they were arrested and that when the officer found the bottle he questioned defendant: "* * * 'Ah ha, what do we have here?' * * *." Defendant, in the testimony following this quotation by him of the officer's question, said:

"And I don't know, I couldn't really say. He thought it was acid, and I just—I couldn't say. I looked at Kenneth [his companion] to, you know, to try to read his eyes * * * if he knew what it was * * *."

The police officer testified that later, after receiving his *Miranda* warnings, defendant had responded to a question on what the tablets were: "* * * 'Yes, I think they're LSD. Acid.' "

Defendant attempted to explain the above response by testifying that

"I just agreed with the officers, what they thought it was. I mean it could—I don't know of any other drug that is in tablet form. I assumed that it was, too * * *."

Defendant's defense was thus based on the theory

---

① Miranda v. Arizona, 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974 (1966).

that at the time he was arrested he was unaware of the true nature of the contents of the pill bottle in that he had placed the bottle in his pocket without examining it and had no knowledge of its contents.

■ Prior to the court's instructing the jury, defense counsel was given the opportunity to except to instructions the court had indicated it would give and defense counsel said:

"MR. HENDERSON: The instruction concerning the possession of a dangerous drug is prima facie evidence of knowledge of its character, I object to that instruction on the ground that it eliminates the presumption that the Defendant is innocent and rejects the burden of proof upon the Defendant to prove his innocence rather than upon the State to prove that he was guilty. That's the basis.

"THE COURT: Your exception is noted."

The court then instructed the jury in part:

"You are instructed that prima facie evidence is a fact or facts presumed to be true *unless disproved by some evidence to the contrary.*

"Proof of possession of a dangerous drug not in the container in which it was originally delivered, sold or dispensed, when a prescription is required, is prima facie evidence that the possession is unlawful unless the possessor also has in his possession a label prepared by the pharmacist for the drug dispensed.

"Proof of unlawful possession of a dangerous drug is prima facie evidence of knowledge of its character." (Emphasis supplied.)

ORS 167.207 (1) provides:

"A person commits the crime of criminal activity in drugs if he knowingly and unlawfully manufacturers [sic], cultivates, transports, pos-

sesses, furnishes, prescribes, administers, dispenses or compounds a narcotic or dangerous drug."

LSD is a dangerous drug. ORS 475.010 (1) (b). In order to convict on a charge of possession of a narcotic or dangerous drug the state must prove that defendant had knowledge of the nature of the substance found in his possession. *State v. Neel,* 8 Or App 142, 493 P2d 740 (1972); *State v. Lehmann,* 6 Or App 600, 488 P2d 1383 (1971).

ORS 167.238 (1) provides:

"Proof of unlawful manufacture, cultivation, transportation or possession of a narcotic or dangerous drug is prima facie evidence of knowledge of its character."

Prima facie evidence has been defined as being

"* * * '* * * evidence as in judgment of law is sufficient to establish the fact, and, if not refuted, remains sufficient for the purpose.' * * *" *In re Estate of Thornberg,* 186 Or 570, 577, 208 P2d 349 (1949); *Millar v. Semler,* 137 Or 610, 613, 619, 2 P2d 233, 3 P2d 987 (1931).

The trial court in effect instructed the jury that possession of an illegal drug creates the disputable presumption that the defendant had knowledge of its character. (*See* ORS 41.340 to 41.360.)

The question presented is whether the legislature in enacting ORS 167.238 (1) intended (a) to create a rebuttable presumption or (b) to state that the inference of knowledge that may be imputed upon a showing of possession would be sufficient to withstand a motion for directed verdict when the prosecution presents no direct evidence relating to knowledge.

ORS 167.238 was enacted as part of the 1971 revision of the criminal code. The commentary to the

Proposed Oregon Criminal Code, Final Draft and Report 266, § 279 (now ORS 167.238) (July 1970) suggests that the Criminal Law Revision Commission felt that the language employed created a rebuttable presumption. However, the commentators cited *In re Estate of Thornberg,* supra, as defining prima facie evidence and also cited *Turner v. United States,* 396 US 398, 90 S Ct 642, 24 L Ed 2d 610 (1970) ; *Leary v. United States,* 395 US 6, 89 S Ct 1532, 23 L Ed 2d 57 (1969) ; *Tot v. United States,* 319 US 463, 63 S Ct 1241, 87 L Ed 1519 (1943), as controlling the constitutional validity of such presumptions in criminal cases by creating a requirement that there be a rational connection between the fact shown and the presumed fact. These cases must be considered in the context of the challenged instructions therein, which all merely instructed the jury that certain evidence would be *sufficient* to support a conviction, or created an *inference* that certain facts existed. Thus, the above federal cases do not treat the question of whether an instruction that the jury *must* find certain facts unless evidence to the contrary is presented by defendant is constitutional. We think the words of the instruction here, "* * * prima facie evidence is a fact or facts presumed to be true unless disproved by some evidence to the contrary," is a direction to the jury that upon proof of possession, if defendant has put on no case at all, he must be presumed to have had knowledge and thus must be found guilty.

In *Ex Parte Kameta,* 36 Or 251, 60 P 394, 78 Am St R 775 (1900), the court held that an ordinance that made possession of a lottery ticket a crime unless the defendant produced evidence that his possession was lawful was unconstitutional because it assumed to

overthrow the presumption of innocence. In *State v. Wakefield*, 111 Or 615, 228 P 115 (1924), a prosecution for adultery where there was no direct evidence that either party to the alleged crime was married, the court held that the presumption that persons deporting themselves as husband and wife were legally married was overcome by the stronger presumption of innocence. (The woman involved had been living with a man who testified they were married.)

These two cases suggest that if ORS 167.238 (1) is to be construed as creating a rebuttable presumption that shifts the burden of proof to the defendant it is to that extent void. However, if the statute merely states a rule that the jury may infer guilty knowledge from the fact of possession, the statute is valid because there is a rational connection between possessing something and having knowledge of the nature of the thing possessed. *United States v. Turner*, supra; *Leary v. United States*, supra; *Tot v. United States*, supra. The proposition is well stated in *State v. Palmer*, 2 Wash App 863, 865-67, 471 P2d 118 (1970), as follows:

> "Even though the accused introduces no evidence whatever, the existence of the fact presumed still remains a question of fact to be determined by the jury and the presumption following from proof of the fact proved is not conclusive upon the jury. They may still return a verdict in favor of the defendant even though they found the fact proved beyond a reasonable doubt.

> "The burden of proof to negate the fact presumed does not shift to the defendant. The jury must consider the fact proved, the fact presumed which under the law follows therefrom, and the presumption that the accused is innocent, which continues throughout the trial. In finding its verdict, the jury is not bound to return either a verdict of

guilty or a verdict of not guilty, but may exercise its judgment upon the facts proven, taking into consideration both presumptions and may, in the exercise of its function, find the accused guilty or not guilty.

"* * * * *

"To be consistent with due process, there must be a 'rational connection' between the fact allowed to be inferred and the fact proved. *Leary v. United States,* 395 U.S. 6, 23 L. Ed. 2d 57, 89 S. Ct. 1532 (1969) * * *.

"* * * * *

"* * * [I]t is apparent that in the case at hand the person with burglary tools in his possession is in a far more favorable position to produce evidence on and explain what his real intentions were than the state. The statute, as such, is a fair and reasonable allocation of the burden of producing evidence under this additional test.

"RCW 9.19.050 does not change the presumption of innocence afforded to the defendant or the state's burden of persuasion beyond a reasonable doubt. The existence of this presumption does not violate constitutional standards."

We adopt that construction that makes the statute constitutional. If defendant is presumed innocent until proven guilty beyond a reasonable doubt, it was error to instruct the jury that it must find against the defendant on the only issue in contest unless the defendant's evidence disproved the prosecution's case.

Reversed and remanded.