Argued and submitted October 29, affirmed December 29, 1999, petition for review
denied May 9, 2000 (330 Or 331)

## STATE OF OREGON,
*Respondent,*

*v.*

## SHARON COLEEN ENGEN,
*Appellant.*

## (950636049; CA A101586)

993 P2d 161

Mary M. Reese, Deputy Public Defender, argued the cause for appellant. With her on the brief was David E. Groom, Public Defender.

Jennifer Scott Lloyd, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before DeMuniz, Presiding Judge, and Haselton and Wollheim, Judges.

HASELTON, J.

**HASELTON, J.**

Defendant appeals from her conviction for possession of a controlled substance, methamphetamine. ORS 475.992(4)(b). The sole issue is whether the state was required to prove not only that defendant knew that she possessed a controlled substance but also that she knew that that substance was methamphetamine. We conclude that, under ORS 161.095(2), ORS 161.115(1), and ORS 475.992(4), the state is not required to prove a defendant's knowledge of the *particular type* of controlled substance possessed. Consequently, we affirm.

For purposes of appeal, the material facts are undisputed. Police arrested defendant after watching her drive erratically and seeing her, after stopping, open a small glass vial of the sort commonly used as a container for cocaine or, less commonly, for methamphetamine. Defendant was "wired" and jittery, and the arresting officer believed that she was under the influence of drugs. After her arrest, defendant consented to a search of her purse, which yielded some drug paraphernalia and a one-gram baggie containing a brownish or off-white powder that the officer believed to be methamphetamine or some other controlled substance. Defendant told the police that she had found those items and the glass vial in her son's room earlier in the day, had dropped them into her purse, and had just stopped to inspect them. Laboratory tests established that the substance in the vial and the baggie was methamphetamine.

Defendant was charged, by indictment, with "Possession of a Controlled Substance, Schedule II" pursuant to ORS 474.992(4). That statute reads, in part:

"(4)  It is unlawful for any person knowingly or intentionally to possess a controlled substance unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of professional practice, or except as otherwise authorized by ORS 475.005 to 475.940 to 475.995. Any person who violates this subsection with respect to:

"* * * * *

"(b)   A controlled substance in Schedule II, is guilty of a Class C felony."

The indictment alleged that defendant "did unlawfully and knowingly possess a controlled substance, to wit: methamphetamine listed in Schedule II * * *."

At trial, defendant reiterated that she had found the items in her son's room. She further testified that she suspected that the powder might be a controlled substance; that she had put the items in her purse; that she showed them to her husband, who told her to dispose of them; and that, before she could do so, the police stopped her. Defendant's husband testified that defendant never used methamphetamine but "could probably guess" that a substance was a controlled substance.

Defendant contended that she could not be convicted of possession of a controlled substance, methamphetamine, ORS 475.992(4)(b), because she did not know that the powder was, in fact, methamphetamine. The state countered that a pertinent scienter inquiry was not whether defendant knew the *particular type* of a controlled substance she possessed, but whether she knew that she possessed a controlled substance *of some sort*. That dispute was framed in the parties' requested jury instructions. Defendant submitted an instruction that stated, in part:

"In this case, the State must prove beyond a reasonable doubt that the defendant knew that the substance she possessed was methamphetamine."

The court refused that instruction and, instead, gave the state's proposed instruction:

"In this case, the state must prove beyond a reasonable doubt that the defendant knew of both the presence and the narcotic or illicit nature of the substance. *The state does not need to prove that the defendant knew the specific identity of the substance.*" (Emphasis added.)

The court explained its reasoning:

"For what it's worth, I'm looking at cases, there are none in Oregon any closer than have been cited, none in Oregon that I've been able to find and certainly none that I've been cited to that specifically addressed the question whether

the knowledge must be that a controlled substance is a particular controlled substance.

"The general—the language that I keep coming across is this notion that in one case the nature of the item—the nature of the substance, narcotic nature of the substance finds analogues in the other cases from other states which do address this. The cases that I'm finding, to the extent that they address this issue at all, require only that the defendant know the illicit nature—the illicit nature or the general nature of the substance possessed. In other words, it's enough from the cases I'm finding that the defendant have knowledge that the substance is an illicit narcotic substance or controlled substance, but does not have to know which specific substance it is. I'm not finding any case that suggests anything to the contrary."

The jury ultimately convicted defendant of possession of a controlled substance, methamphetamine. ORS 475.992(4)(b).

■ On appeal, defendant's only assignments of error pertain to the jury instructions quoted above. Defendant does not dispute that she did, in fact, possess methamphetamine and that the evidence was sufficient to support a finding that she knew that she possessed a controlled substance of some sort. The only issue is whether the state had to prove that defendant knew that she possessed methamphetamine specifically, and not some controlled substance generally.

Defendant argues that, under the omnibus criminal statutes concerning culpable mental state, a defendant's knowledge of the particular type of controlled substance possessed is a " 'material element' of the offense [ORS 475.992(4)(b)] that necessarily requires a culpable mental state." ORS 161.095(2); ORS 161.115(1). Defendant particularly invokes *State v. Blanton*, 284 Or 591, 588 P2d 28 (1978), *affirming* 31 Or App 327, 570 P2d 411 (1977), and contends that our holding in *State v. Van Norsdall*, 127 Or App 300, 873 P2d 345 (1994), and *State v. Walker*, 140 Or App 472, 915 P2d 1039 (1996), erroneously misconstrued and misapplied *Blanton*.

The state responds that the only requisite mental state for purposes of ORS 161.095(2) and ORS 161.115(1) is

intentional or knowing possession of "*a* controlled sub-stance," ORS 475.992(4) (emphasis added), and that, because defendant knew that she possessed a controlled substance of some sort, her alleged ignorance of the exact nature of the substance was immaterial. Indeed, the state asserts, defendant's rendition of the statute would permit defendants to entirely avoid criminal liability either through wilful igno-rance of the nature of the substance possessed or through the fortuity of a mistaken belief as to the exact nature of the con-trolled substance: "I thought it was cocaine, but it turned out to be methamphetamine."

The question is straightforward. But its resolution is not. As the trial judge observed, this is—somewhat surpris-ingly—an issue of first impression in Oregon. In resolving that issue, we consider, in turn, the omnibus statutes relat-ing to culpable mental states, associated appellate case law, and the evolution of criminal drug possession statutes in Oregon.

As part of the 1971 Oregon Criminal Code, the leg-islature enacted a series of statutes generally describing the content, and requirements of proof, of culpable mental states. *See* ORS 161.085 to ORS 161.125. Two parallel provisions are especially pertinent to this case. First, ORS 161.095(2) provides:

"Except as provided in ORS 161.105, a person is not . guilty of an offense unless the person acts with a culpable mental state with respect to each material element of the offense that necessarily requires a culpable mental state."[1]

Second, ORS 161.115(1) provides:

"If a statute defining an offense prescribes a culpable mental state but does not specify the element to which it applies, the prescribed culpable mental state applies to

---

[1] ORS 161.105(1) provides:

"Notwithstanding ORS 161.095, a culpable mental state is not required if:

"(a) The offense constitutes a violation, unless a culpable mental state is expressly included in the definition of the offense; or

"(b) An offense defined by a statute outside the Oregon Criminal Code clearly indicates a legislative intent to dispense with any culpable mental state requirement for the offense or for any material element thereof."

each material element of the offense that necessarily requires a culpable mental state."

The critical, pivotal phrase of both provisions is "each material element of the offense that *necessarily requires a culpable mental state.*" In a series of decisions since 1973, we and the Supreme Court have wrestled with the content and application of that phrase, as well as with related concepts in an associated statute, ORS 161.105(1).

In *State v. Irving*, 268 Or 204, 520 P2d 354 (1974), *rev'g* 14 Or App 671, 514 P2d 909 (1973), the defendant was charged with fraudulent sale of imitation drugs under *former* ORS 167.232 (1971).[2] That statute provided that any person who sold a substance "not a narcotic or dangerous drug, to a peace officer or his agent by falsely representing it to be a narcotic or dangerous drug" was guilty of a Class B misdemeanor. The defendant successfully demurred, contending, *inter alia*, that the indictment was defective because it did not allege that he knew that he was making a sale to a police officer. In particular, the defendant contended that the sale of "imitation" drugs to a peace officer or agent was a material element of the offense "necessarily requir[ing] a culpable mental state." ORS 161.095(2). This court affirmed the dismissal, accepting the defendant's argument. In so holding, we emphasized that the 1971 code revisions were intended to limit the imposition of criminal strict liability and that, "[u]nless the state is required to prove the [defendant's] knowledge of this essential element that makes criminal what would otherwise not be a crime, then ORS 161.232 creates a strict liability offense." *Irving*, 14 Or App at 677.

The Supreme Court reversed. The court acknowledged that, if ORS 161.095(2) and ORS 167.232 "are read together literally, then there seems to be no escape from the conclusion reached by the Court of Appeals." *Irving*, 268 Or at 206. Nevertheless, the court concluded that the legislative history of ORS 167.232 demonstrated that the legislature did not "intend that the statute was to be limited to those cases in which the seller knew that the purchaser was a peace officer." *Id.* at 206. Such a construction, the court suggested

---

[2] ORS 167.232 (1971) was repealed in 1977. Or Laws 1977, ch 745, § 54.

would be absurd and patently unreasonable. *Id.* at 206-07. The court noted, finally, that its construction did not render ORS 167.232 a strict liability crime: "Conviction still depends on establishing that the defendant fraudulently misrepresented the substances he sold, which in itself constitutes knowingly culpable behavior." *Id.* at 207.

Four years later, in *Blanton,* the Supreme Court revisited ORS 161.095(2). There, the defendant was convicted of criminal activity in drugs, ORS 167.207 (1975),[3] based on his distribution of a controlled substance to a person under the age of 18. That statute provided, in part:

"(1)   A person commits the offense of criminal activity in drugs if he knowingly and unlawfully manufactures, cultivates, transports, possesses, furnishes, prescribes, administers, dispenses or compounds a narcotic or dangerous drug.

"(2)   Except as provided in subsections (3) and (4) of this section, criminal activity in drugs is a Class B felony, or the court may, under the criteria set forth in ORS 161.705, enter judgment for a Class A misdemeanor and impose sentence accordingly.

"* * * * *

"(4)   Notwithstanding subsection (2) of this section, if the defendant is 18 years of age or over and the conviction is for furnishing a narcotic or dangerous drug to a person under 18 years of age and who is at least three years younger than the defendant, criminal activity in drugs i[s] a Class A felony."

The defendant appealed, assigning error to the trial court's refusal to instruct the jury that the state was required to prove not only that the defendant distributed drugs but also that he knew that the recipient of the drugs was under 18. We agreed with the defendant that his requested instruction comported with, and was compelled by, ORS 161.095(2) and ORS 161.115(1):

---

[3] In 1977, ORS 167.207 was repealed and replaced by ORS 475.992. *See* Or Laws 1977, ch 745, § 54. See discussion below of statutory evolution of criminal statutes proscribing possession of controlled substances. 164 Or App at 603-07.

"The phrase 'necessarily requires a culpable mental state' may add some confusion to our analysis. However, in view of the strong policy embodied in the statutes of requiring a culpable mental state for every material element, *it is apparent that this phrase refers to all elements which go to the substance of the conduct prohibited. The only elements which do not 'necessarily require a culpable mental state' are those which relate to jurisdiction and the like but are unrelated to the prohibited conduct.*" *Blanton*, 31 Or App at 331 (emphasis added).

We further concluded that *Irving* was distinguishable:

"[In *Irving*, t]he Supreme Court relied upon two factors not present here—legislative history to the effect that the statute was not to be limited to situations where the seller knew the identity of the buyer, and the court's opinion that a literal application of the statutory culpability requirements would produce an absurd result. To the contrary, the legislative history of ORS 167.207(4) does not provide any indication of intent to dispense with the requirement of mental culpability with respect to the age of the person to whom drugs are furnished. In addition, a literal application of the statutory culpability requirements to ORS 167.207(4) would not yield an absurd result." *Id.* at 332.

The Supreme Court affirmed, reiterating our analysis. The court echoed, and apparently endorsed, our view that the qualifying phrase "that necessarily requires a culpable mental state"

"was meant to distinguish those elements defining the substance or quality of the forbidden conduct from others relating, in the explanation of the Criminal Law Revision Commission, 'solely to the statute of limitations, jurisdiction, venue, and the like' * * *. There is no question that the age of the recipient is a material element of the offense defined as a Class A felony in ORS 167.207(4)." 284 Or at 595.

After *Blanton*, the Supreme Court issued several opinions addressing the operation of ORS 161.105(1)(b), which provides that a culpable mental state is not required—*i.e.*, that strict criminal liability can be imposed—if "an offense defined by a statute outside the Oregon Criminal Code *clearly indicates a legislative intent* to dispense with any culpable mental state requirement for the offense or for

any material element thereof." (Emphasis added.) *See, e.g., State v. Buttrey*, 293 Or 575, 651 P2d 1075 (1982) (to obtain conviction for driving while suspended, *former* ORS 487.560, state need not prove that motorist had actual or constructive knowledge that license had been suspended); *State v. Miller*, 309 Or 362, 368-69, 788 P2d 974 (1990) (defendant can be convicted of DUII, ORS 813.010, without proof of a culpable mental state as to material element of being under the influence of an intoxicant).

*Miller* is especially instructive for two reasons. First, in determining whether ORS 813.010 "clearly indicates a legislative intent to dispense with any culpable mental state requirement," the court reviewed the history of DUII statutes in Oregon. *See* 309 Or at 368 ("The offense of DUII does not nor has it ever required proof of a culpable mental state * * *. Never in the 70-year history of this state's legislation has one word been written in any DUII statute to require such proof.").[4] Second, the opinion suggests that requirements of a culpable mental state may be logically unrelated to an offender's prohibited *status*.

"Having a certain [blood alcohol content] or being under the influence is a status, and a person's mental state has nothing to do with whether that status exists. The statute requires only that the state prove that a defendant had the status while driving, not that the defendant knew or should have known of it. One who drives after drinking intoxicating liquor takes the risk that his BAC violates the statute. * * * The statute, in the context of its history and surrounding circumstances, clearly indicates a legislative intent that the BAC element of DUII does not involve any culpable mental state." 309 Or at 369.

Thus, although *Blanton* seemingly endorsed an extremely broad view of material elements requiring proof of a culpable mental state, *Miller*, without referring to *Blanton*, constricted that universe.

---

[4] *See also Miller*, 309 Or at 368:

"It seems preposterous that, with the legislative effort to make DUII easier to prove in almost every session over the last two decades, any legislator could ever have intended that a drunken driver would assert the defense that 'I was so drunk I didn't know what I was doing.' "

In *State v. Van Norsdall*, we emphasized and applied *Miller*'s "status" distinction. The issue there was whether, in a prosecution for felon in possession of a firearm, the state was required to prove not only that the defendant knowingly possessed a weapon but also that he knew of his ex-felon status. The trial court refused to give the defense's requested instruction to that effect, and we affirmed. The majority observed:

> "The 'act' prohibited by ORS 166.270 is the possession of firearms. The actor's status of being a felon, although an element of the crime, is not an act; it is simply part of the attending circumstances. There is no mental state, *i.e.*, *mens rea*, applicable to it.

> "In *State v. Blanton* * * *, the Supreme Court divided the elements of an offense into two categories: (1) those that relate to or define 'the substance or quality of the forbidden act,' which necessarily require a culpable mental state, and (2) those that relate to conditions that exist outside the actor's state of mind, such as 'venue, jurisdiction, statutes of limitation and the like,' for which no culpable mental state is required. 284 Or at 595. The status of being a felon is within this latter category. As the court said in *State v. Miller* * * * the existence of a status that is an element of the crime (in that case, being under the influence of intoxicants,) has nothing to do with the person's mental state. We conclude that the status of being a felon is not an element that is logically provable by a *mens rea*, and that, therefore, it is not an element to which a culpable mental state applies under ORS 161.115(2).

> "* * * * *

> "Just as a conviction for theft in the third degree would not be reversed on the basis of a defendant's unchallenged testimony that he did not know that the value of the property exceeded $50, *see* ORS 164.043(b), because the value of the property is independent of the question of whether the defendant is or should be personally responsible for his acts, here, being a felon is separate from the acts that constitute the crime of possessing a firearm, and is not subject to a culpable mental state. In other words, a felon will not be acquitted of the crime of being a felon in possession of a firearm simply because he claims to have forgotten his prior felony conviction or professes not to understand what a

'felon' is."[5] *Van Norsdall*, 127 Or App at 304-05 (citations omitted).

In *Van Norsdall*, we did not engage in statutory construction of the felon in possession statute, ORS 167.270, to determine whether the legislature intended to require proof of a defendant's knowledge of his ex-felon status. *Compare, e.g., Irving, Buttrey*, and *Miller* (all discussing, and relying on, legislative history). Nor did we attempt to describe the limits of which matters "that relate to conditions that exist outside the actor's state of mind" are, nevertheless, material elements "that necessarily require a culpable mental state."[6]

Finally, and most recently, in *State v. Walker*, we applied and extended *Van Norsdall*'s "attending circumstances" reasoning. There, we held that the state could convict a defendant of distributing a controlled substance within a 1,000 feet of a school, ORS 475.999,[7] without proving that the defendant knew that he was within a 1,000 feet of the

---

[5] Judge Leeson dissented from that aspect of the majority's reasoning and, particularly, took issue with the majority's characterization of *Blanton*'s second category as including "extrinsic matters" beyond merely "procedural" elements.

"Defendant's status as a felon is a 'material element' of the crime. Furthermore, it is an element that defines the substance or quality of the forbidden conduct. Were it not for defendant's status as a felon, his possession of a firearm could not violate ORS 166.270. Defendant's status as a felon has nothing to do with 'the statute of limitations, jurisdiction, venue and the like.' Therefore, under *Blanton*, it is an element for which a culpable mental state is required." *Van Norsdall*, 127 Or App at 307-08 (footnote omitted).

[6] For example, whether a substance is, in fact, a controlled substance is a "condition that exists outside the [defendant's] mind." Nevertheless, it is undisputed that, to obtain a conviction for unlawful possession of a controlled substance, the state must prove, at least, that the defendant knew that he or she possessed a controlled substance of some sort. *See, e.g., State v. Offord*, 14 Or App 195, 199, 512 P2d 1375 (1973); *State v. Neel*, 8 Or App 142, 147, 493 P2d 740 (1972) (possession of controlled substances is not a strict liability crime: "the state must establish that the defendant had actual knowledge of the nature of the items he was charged with possessing").

[7] ORS 475.999 provides, in part:

"Except as authorized by ORS 475.285 and ORS 475.940 to ORS 475.995, it is unlawful for any person to:

"(1) Manufacture or deliver a schedule I, II or III controlled substance within 1,000 feet of the real property comprising a public or private elementary, secondary or career school attended primarily by minors.

"(a) Unlawful manufacture or delivery of a controlled substance within 1,000 feet of a school is a Class A felony."

school. Analogizing the 1,000 foot component to the defendant's ex-felon status in *Van Norsdall*, we concluded that, "[s]imilarly, the *location* of the offense in this instance is not an act, but an attendant circumstance of the underlying criminal conduct of delivery of a controlled substance" and, thus, it is "not an element that requires accompanying proof of a culpable mental state." *Walker*, 140 Or App at 477-78 (emphasis in original).[8]

The case law from *Irving* to *Walker* is not a seamless web. The courts' approach has varied and, on occasion, has not been entirely consistent. Nevertheless, with few exceptions, the most consistent theme has been a search for legislative intent: Did the legislature intend to require proof of a culpable mental state with respect to a particular material element? Would requiring such a showing produce such incongruous—and, by extension, legislatively "unintended"—results that the contested element could not be one that "necessarily requires a culpable mental state"? *See, e.g., Irving*; *Miller*.

Our inquiry thus reduces to a determination of legislative intent. Did the legislature, in enacting ORS 475.992(4), intend to require the state to prove a defendant's knowledge of the exact type of controlled substance possessed? As in other analogous contexts, *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993), frames the analysis.

ORS 475.992(4) provides, in pertinent part:

"It is unlawful for any person knowingly or intentionally to possess a controlled substance [subject to exceptions]. Any person who violates this subsection with respect to:

"(a)   A controlled substance in Schedule I, is guilty of a Class B felony.

"(b)   A controlled substance in Schedule II, is guilty of a Class C felony.

---

[8] *Cf. State v. Casavan*, 139 Or App 544, 912 P2d 946, *rev den* 323 Or 265 (1996) (where a defendant was convicted of burglary in the first degree and sentencing court relied on subcategory factor that dwelling was occupied, the state was not required to prove that the defendant knew that the dwelling was occupied).

"(c)   A controlled substance in Schedule III, is guilty of a Class A misdemeanor.

"(d)   A controlled substance in Schedule IV, is guilty of a Class C misdemeanor.

"(e)   A controlled substance in Schedule V, is guilty of a violation."

The text of the statute is ambiguous with respect to the referent for the mental state element. On one hand, the first sentence states that knowing possession of *"a* controlled substance" is unlawful. As the state contends, that language, by itself, can reasonably be understood to mean that the essential criminal act is actual possession of a substance, coupled with knowledge that it is a controlled substance *of some sort.* So construed, subsections (4)(a)-(e) merely vary the classification of that crime based on the nature of the substance possessed; they do not require proof that a defendant know the exact type of the controlled substance.

Conversely, as defendant contends, the second sentence ("Any person who violates this subsection with respect to * * *") can arguably be read as tying the scienter element described in the first sentence to the particular substances described in subsections (4)(a)-(e). That is, just as the classification of the crime under subsections (4) (a)-(e) depends on proof of the type of substance actually possessed, the scienter requirement is similarly, and congruently, focused.

As a matter of simple syntax, the statutory text is reasonably susceptible to either reading. However, the statute's context—and, particularly, its historical evolution—lends some credence to the state's construction. *See, e.g., State v. Tarpley,* 157 Or App 693, 700, 972 P2d 1201 (1998), *rev den* 328 Or 465 (1999) (including in contextual inquiry "the preexisting common law and statutory framework within which the law was enacted * * * and prior versions of the statute"). ORS 475.992 was enacted in 1977 as part of an overhaul of Oregon's controlled substances criminal laws. Before 1977, Oregon statutes prohibiting the possession of controlled substances generally did not differentiate among substances. All controlled substances—with the exception of marijuana—were treated identically. The predecessor to ORS 475.992, *former* ORS 167.207, which was enacted in 1971, provided that, generally, possession of any "narcotic or

dangerous drug" was a Class B felony.[9] Before that, from 1935 to 1971, Oregon's Uniform Narcotic Drug Act stated that possession of any "narcotic drug" was punishable with a fine not to exceed $5,000 and a prison term not to exceed 10 years. ORS 474.020(1) (1969); ORS 479.990(1) (1969).[10]

No case decided under those prior statutes required the state to prove that a defendant knew the particular type of controlled substance possessed. Although the state was required to prove a defendant's knowledge of "the nature" of the substance possessed, the references to "nature" in the case law appear to be to the *unlawful character* of the substance—*i.e.*, possession was not a strict liability offense. *See, e.g., State v. Offord*, 14 Or App 195, 198, 512 P2d 1375 (1973) (the defendant contended that "he was unaware of the true contents of the pill bottle in that he had placed the bottle in his pocket without examining it and had no knowledge of its contents"); *State v. Neel*, 8 Or App 142, 144, 493 P2d 740 (1972) (the defendant contended that he did not know contents of suitcase and bags placed in trunk of his car by other persons).[11] Indeed, given that the former statutes treated all substances (except marijuana) identically, it would have made no sense for a defendant to contend that *general* knowledge that the possessed substance was controlled was insufficient to support a conviction.[12]

---

[9] *See* 164 Or App at 598 (quoting statute).

[10] Oregon's Uniform Narcotic Drug Act was enacted in 1935. Or Laws 1935, ch 121. Under that act, *see* ORS 474.010(18) (1969), "narcotic drug" was defined as

"coca leaves, opium, marihuana and every other substance neither chemically nor physically distinguishable from them; or other drugs to which the federal narcotic laws may now or hereafter apply; or any drug found by the State Board of Pharmacy, after reasonable notice and opportunity for hearing, to have addiction-forming or addiction-sustaining liability similar to morphine or cocaine, from the publication of such finding."

[11] In *State v. Lehmann*, 6 Or App 600, 603-04, 488 P2d 1383 (1971), in addressing the admissibility of evidence of the defendant's subsequent sales of marijuana, we stated that, "[a]lthough the state must establish that the defendant has knowledge *that the substance possessed was marijuana* and that the possession was unlawful, proof of the possession alone is enough to take the case to the jury." (Emphasis added.) In context, our particular reference to "marijuana" was factual, not legal. That is, that reference was merely descriptive of the circumstances in *Lehmann*, and did not purport to address the scienter issue presented here, which was not raised there.

[12] Another reason that defendants may not have made that argument—at least between 1971 and 1977—was ORS 167.238(1). That statute, enacted as part of the 1971 code revisions, provides:

It was in that historical context that ORS 475.992(4) was enacted in 1977. That statute departed from over 40 years of practice in two significant respects. First, it differentiated among various types of controlled substances. Second, that differentiation resulted in a reduction of criminal penalties flowing from the possession of most controlled substances: Before 1977, possession was, generally, a Class B felony; after the enactment of ORS 475.992(4), only possession of Schedule I substances remained a Class B felony, with possession of all other substances being classified as less serious offenses.

Given the historical context of the 1977 legislation—the lack of differentiation among types of controlled substances and the historic lack of an explicit mental state requirement pertaining to the specific type of controlled substance possessed—it seems *unlikely* that the 1977 Legislature intended to impose such a requirement. That is, it seems unlikely that the legislature, in differentiating among the types of substances, intended not only to reduce the penalties for possession of Schedule II, III, IV, and V controlled substances, but also, simultaneously, to make it more *difficult* for the state to prove the crime of unlawful possession by adding a narrower, more specific mental intent requirement. At the very least, one might expect such an intent to have been expressed in the legislative history. *See, e.g., Miller,* 309 Or at 368-69 (noting that nothing in the text or history of the 1975 revisions to the DUII statutes evinced legislative intent to deviate from the long-established principle that culpable mental state was not required for DUII). But the legislative history expressed no such intent.

The legislative history of the 1977 controlled substance amendments does not refer to the knowledge requirements of ORS 475.992(4). The Senate Judiciary Committee's

---

"Proof of unlawful manufacture, cultivation, transportation or possession of a controlled substance is prima facie evidence of knowledge of its character."

In *Offord*, we held that that statute could not, constitutionally, create a rebuttable presumption, shifting the burden of proof of scienter to defendants. Instead, we concluded that the statute "merely states a rule that the jury may infer guilty knowledge from the fact of possession." 14 Or App at 201-02. In *State v. Rainey*, 298 Or 459, 465-66, 693 P2d 635 (1985), the Supreme Court noted three "restraints" on the use of such a "statutory inference" and concluded that that inference was not a proper subject of jury instructions.

Measure Explanation merely states that the existing statutes "no longer adequately reflect the current state of the art of any classification or control" and that the proposed legislation "sets out penalties for possession * * * of controlled substances that correspond to the relative hazard and abuse potential for each substance." Senate Judiciary Committee's Measure Explanation SB904 (1977). No testimony or remarks by legislators focus on the culpable mental state for possession.

■   In sum, the text of ORS 475.992(4) supports, as syntactically plausible, the parties' contending constructions. The historical context of the statute *suggests*—albeit by negative implication—that the legislature did not intend to require proof of knowledge of the particular controlled substance possessed. The legislative history—again, albeit by negative implication, verging on speculation—comports with that view. In short, while the first two levels of the conventional *PGE* analysis may give some support to the state's proposed construction, they are hardly decisive. Consequently, we proceed to *PGE*'s "third level": "general maxims of statutory construction." *PGE*, 317 Or at 612. Among those maxims is the principle that "when no legislative history exists, the court will determine how the legislature would have intended the statute to be applied had it considered the issue." *Id.*

The answer to that question is clear. Framed most bluntly: Would the legislature have intended a defendant who possessed a controlled substance and knew that she possessed a controlled substance to entirely avoid criminal liability simply because she did not know the particular type of substance possessed? Similarly, can a defendant who possesses cocaine, but mistakenly believes that it is methamphetamine, completely avoid criminal liability? Under defendant's proposed construction, the answer to both questions is, necessarily, "yes."

■   We have no doubt that the members of the 1977 Legislature, if confronted with the same questions, would have answered them differently. Defendant's proposed construction would reward—indeed, promote—wilful "ignorance" and

purposeful "mistake." Conversely, the state's proposed construction comports with the legislature's manifest and historically consistent commitment to criminalizing "non-innocent" possession of controlled substances. A person who possesses a controlled substance, believing it to be a controlled substance, assumes the risk of "mistake" as to the precise nature of the substance. *See generally Miller*, 309 Or at 369 ("One who drives after drinking intoxicating liquor takes the risk that his BAC violates the statute.").

■　　We note, finally, that our estimation of the legislature's putative intent accords with the consensus of authority from other jurisdictions that have considered this, and closely analogous, questions. *See, e.g., State v. Nunez-Martinez*, 90 Wash App 250, 254, 951 P2d 823 (1998) ("In our view, the guilty knowledge required by [the statute] is knowledge that the substance being delivered is a controlled substance. It is not knowledge of the substance's exact chemical or street name"; citing authority from Colorado, the District of Columbia, Georgia, Illinois, Massachusetts, North Carolina, and South Dakota); *State v. Sartin*, 200 Wis 2d 47, 546 NW2d 449 (1996); *People v. Garringer*, 48 Cal App 3d 827, 835, 121 Cal Rptr 922 (1975) ("A person who intends to possess a controlled substance, believes he possesses a controlled substance, and in fact possesses a controlled substance is guilty of [unlawful possession of a controlled substance]. * * * The defendant need not know the chemical name or the precise chemical nature of the substance."). *Sartin* is exemplary:

> "As the State suggests, insulating from criminal liability those defendants who knowingly deal in prohibited controlled substances, but are ignorant, mistaken, or willing to misrepresent the exact nature or criminal name of the substance in which they traffic, is contrary to public policy.
>
> "* * * * *
>
> "The requirement that a defendant 'knowingly' distribute or possess a controlled substance adequately protects those individuals who may innocently become involved in a drug transaction by inadvertence or accident. However, one who knowingly engages in the trade of controlled substances should not profit by feigning ignorance, and subsequently relying on the State's potential inability to prove

knowledge of the exact substance involved." 200 Wis 2d at 64.[13]

Under ORS 161.095(2), ORS 161.115(1) and ORS 475.992(4), the state is not required to prove a defendant's knowledge of the particular type of controlled substance possessed. The trial court correctly instructed the jury.

Affirmed.

---

[13] Federal courts considering analogous issues have reached the same conclusion. Recently, in *United States v. Barbosa*, 51 F Supp 2d 597, 600 (ED Pa 1999), the court summarized that authority:

"*See United States v. Valencia-Gonzales*, 172 F3d 344, 345-46 (5th Cir 1999) (holding that a defendant who believed he sold cocaine was properly sentenced under the higher heroin penalty because drug dealers assume the risk of what kinds and amounts of controlled substances they carry); *United States v. Strange*, 102 F3d 356, 361 (8th Cir 1996) (holding that a defendant who believed he was carrying marijuana was properly sentenced under higher cocaine penalty); *United States v. Salazar*, 5 F3d 445, 446 (9th Cir 1993) (holding that cocaine, like marijuana, is a controlled substance and regardless of the defendant's knowledge either of the nature or the weight of the substance, he knows that he is importing a controlled substance); *United States v. Obi*, 947 F2d 1031, 1032 (2d Cir 1991) (holding that the district court properly determined the sentence for heroin, rather than cocaine, even though the defendant believed he was carrying cocaine, and that the mens rea requirement for possession of a controlled substance satisfied due process concerns); *United States v. Gomez*, 905 F2d 1513, 1514-15 (11th Cir 1990) (holding that it was enough that the defendant knew that he was engaging in conduct to introduce some type of illegal substance into the stream of commerce and that he need not have specific knowledge of the particular drug involved as long as he knew he was dealing with a controlled substance)." (Footnote omitted.)