Argued and submitted April 3, affirmed May 3, 2000

# STATE OF OREGON,
*Respondent,*

*v.*

# JONATHAN MICHAEL HANSZ,
*Appellant.*

## (C9602-31509; CA A102267)

5 P3d 1109

Wayne Mackeson argued the cause and filed the brief for appellant.

Thomas C. Patton, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Landau, Presiding Judge, and Linder and Brewer, Judges.

BREWER, J.

## BREWER, J.

Defendant was tried and convicted on stipulated facts for unlawful possession of a Schedule II controlled substance. ORS 475.992(4)(b). In a single assignment of error, defendant argues that the trial court erred in overruling his objection to an amendment by interlineation of the charging instrument that changed the identity of the controlled substance in question from cocaine to methamphetamine. Defendant asserts that the amendment was impermissible because it altered the essential nature of the charge. We disagree and, therefore, affirm.

On February 24, 1996, defendant was apprehended after he stole merchandise from a store. When defendant was searched incident to arrest, police found a bamboo pipe in his possession that contained residue of methamphetamine. As a result, defendant was charged in a district attorney's information with theft in the second degree, ORS 164.045, and unlawful possession of a controlled substance. Count 2 of the information alleged:

> "The said defendant on or about February 24, 1996, in the County of Multnomah, State of Oregon, did unlawfully, intentionally and knowingly possess a controlled substance, to-wit: *cocaine*, listed in Schedule II, contrary to the Statutes in such cases made and provided and against the peace and dignity of the State of Oregon." (Emphasis added.)

After his arraignment, defendant petitioned to enter the court's drug treatment diversion program (STOP) and the court admitted defendant into the program. As a condition of admission, defendant executed the following written agreement:

> "1. I hereby give up the right to a preliminary hearing, Grand Jury Indictment and agree to proceed upon the District Attorney's Information.
>
> "2. I hereby give up any former jeopardy rights in any subsequent action upon this charge or any other offenses based upon the same criminal episode.
>
> "3. I hereby give up my right to a speedy jury trial. I give up my right to call witnesses and to cross-examine the

State's witnesses. I also give up my right to testify. I give up the right to contest the stop and/or search in my case.

"4. I hereby agree that should the treatment program be terminated after 14 days from today either by the Court or me, I will proceed to a Court trial based solely upon the facts in the police report and laboratory reports, which I hereby stipulate to. Both the State and I agree that during the first 14 days from today I may withdraw from STOP and have all my constitutional rights restored. The State, likewise, during the first 14 days, may withdraw from this agreement and oppose your entry into STOP as non-compliant with entry requirements. The State, at any time, may request your termination from STOP for non-compliance. The termination decision will be decided by the Court." (Underlining in original.)

The laboratory report referred to in paragraph 4 of the STOP agreement identified the substance found in defendant's possession as "methamphetamine, a Schedule II controlled substance."

In July 1996, the trial court revoked defendant's release agreement and issued a warrant for his arrest after he failed to appear as required by the terms of the STOP program. Defendant was taken into custody on the warrant in April 1998 and, when brought before the court, sought reinstatement in the program. On April 29, the trial court denied defendant's request and, in open court, announced its intention to proceed with a stipulated facts trial because of defendant's noncompliance with the STOP agreement. At the same hearing, the prosecutor requested leave to amend count 2 of the information to "change the controlled substance from cocaine to methamphetamine." The court granted the state's motion despite defendant's objection and set trial for the following day. On April 30, the court proceeded to trial on stipulated facts as provided in the STOP agreement. The court received in evidence the police reports and the police laboratory report that identified the substance in defendant's possession as methamphetamine. The court found defendant guilty of both counts in the amended information and entered a judgment of conviction accordingly.

Defendant appeals only from his conviction for unlawful possession of a controlled substance. Defendant

asserts that the trial court had no authority to permit the amendment of the information, because the defect in the original information—its failure to identify correctly the controlled substance he possessed—was one of substance rather than form. Therefore, defendant reasons, the state could not proceed to trial without first either obtaining a grand jury indictment on the charge or, alternatively, a waiver of indictment by defendant or a determination of probable cause from the court following a preliminary hearing. Because the state pursued none of those options, defendant contends that his conviction must be reversed.

In *State v. Wimber*, 315 Or 103, 113, 843 P2d 424 (1992), the Supreme Court recognized that, under Article VII (Amended), section 5, of the Oregon Constitution, a trial court may permit the amendment of a charging instrument that is defective in form but may not permit the amendment of a defect in substance. The court adopted a four-part test for determining whether a defect in a charging instrument is one of form or substance:

"(1) Did the amendment alter the essential nature of the [charge] against defendant, alter the availability to him of defenses or evidence, or add a theory, element, or crime? * * *

"(2) Did the amendment prejudice defendant's right to notice of the charges against him and to protection against double jeopardy? * * *

"(3) Was the amendment itself sufficiently definite and certain? * * *

"* * * * *

"(4) Did the remaining allegations in the [charging instrument] state the essential elements of the offenses?" *Id.* at 114-15.

The answers to three of the four *Wimber* inquiries are straightforward; each suggests that the amendment in this case was one of form. As to the second question, defendant concedes that his right to notice of the charges against him was not prejudiced by the amendment. Defendant "stipulated" to the laboratory report in the STOP agreement. The

error that was corrected by the amendment to the information was readily apparent from the discrepancy between the laboratory report that identified the substance in his possession as methamphetamine and the original information that described it as cocaine. In addition, the correction of the error did not expose defendant to the risk of double jeopardy.[1] The laboratory report proved that the pipe in defendant's possession contained only methamphetamine—not cocaine. With respect to the third inquiry, defendant makes no argument that the amendment was indefinite or uncertain; to the contrary, it was specific and clear. The fourth element of the *Wimber* test is inapplicable here because the amendment merely substituted one controlled substance for another, as opposed to deleting material from the information. Therefore, we focus, as does defendant, on the first *Wimber* inquiry.

In fact, the inquiry is narrower still. Defendant does not contend that the amendment altered the availability to him of defenses or evidence or that it added a theory, element, or crime to the information. It did none of those things. Defendant asserts instead that

> "there is not simply a generic crime of possession of a controlled substance, or possession of a Schedule II * * * controlled substance. Rather, the [s]tate is required to prove beyond a reasonable doubt the specific controlled substance which the defendant is alleged to have possessed."

From that premise, defendant urges, the substitution of one controlled substance for another altered the essential nature of the charge against him.

■ A matter that is essential to show that an offense has been committed is one of substance and not of form. *Id.* In order to determine what is necessary to show that defendant committed an offense, we must examine the statute under which defendant was charged, ORS 475.992. That statute provides, in part:

---

[1] ORS 131.515 provides, in part:

"(1) No person shall be prosecuted twice for the same offense.

"(2) No person shall be separately prosecuted for two or more offenses based upon the same criminal episode, if the several offenses are reasonably known to the appropriate prosecutor at the time of commencement of the first prosecution and establish proper venue in a single court."

"(4) It is unlawful for any person knowingly or intentionally to possess a controlled substance unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of professional practice, or except as otherwise authorized by ORS 475.005 to 475.285 and 475.940 to 475.995. Any person who violates this subsection with respect to:

"* * * * *

"(b) A controlled substance in Schedule II, is guilty of a Class C felony."

Generally speaking, a charging instrument is sufficient if it alleges an offense in the language of the statute defining that offense. *State v. Fair*, 326 Or 485, 490, 953 P2d 383 (1998). An exception exists where discovery is unlikely to inform the defendant of the specific criminal conduct the state intends to prove. *See State v. Cooper*, 78 Or App 237, 240, 715 P2d 504 (1986). Such is not the case where a defendant is charged with unlawful possession of a controlled substance. Here, as is typically the case, the identity of the particular substance involved was established by a forensic laboratory report available through discovery. Excluding the specific identification of the substance possessed, the original and amended information each alleged the offense charged in the language of ORS 475.992(4)(b). The additional language identifying the precise type of substance involved was, therefore, surplusage. *See State v. Taylor*, 94 Or App 538, 540, 765 P2d 1257 (1988) (allegation that sexual contact consisted of "kissing and fondling" the victim was unnecessary to charge defendant with first-degree sexual abuse).

Our conclusion is reinforced by our recent decision in *State v. Engen*, 164 Or App 591, 993 P2d 161 (1999). In *Engen*, as here, the defendant was charged with "Possession of a Controlled Substance, Schedule II" under ORS 475.992(4). The indictment alleged that the defendant "did unlawfully and knowingly possess a controlled substance, to wit: methamphetamine listed in Schedule II * * *." On appeal, the defendant argued that the trial court had improperly instructed the jury that the state was required to prove only that the defendant knew of the presence and narcotic or illicit nature of the substance and was not required to establish

that the defendant knew the specific identity of the substance. We affirmed the defendant's conviction, concluding that, under ORS 475.992(4), the state is not required to prove a defendant's knowledge of the particular type of controlled substance possessed. *Id.* at 609. We concluded that "the essential criminal act is actual possession of a substance, coupled with knowledge that it is a controlled substance *of some sort.*" *Id.* at 604 (emphasis original).

■ ■ Defendant argues that *Engen* is distinguishable because it did not reach the precise issue presented in this case; namely, whether the charging instrument must plead that the defendant possessed a *specific substance* listed in Schedule II, irrespective of his knowledge of the identity of the particular substance. Although we agree that *Engen* is not squarely controlling, we disagree with defendant's contention that its reasoning is inapplicable to this case. *Engen* held that violation of ORS 475.992(4)(b) requires knowing or intentional possession of *a* controlled substance within Schedule II. If it is not essential to prove that the accused was conscious of the particular type of Schedule II substance possessed, it seems equally unnecessary to plead the identity of the substance possessed by name, as long as the charging instrument alleges that it is listed in Schedule II. Put differently, if a defendant must only *knowingly or intentionally* possess a Schedule II controlled substance, not a particular Schedule II controlled substance, then neither must he *possess* a particular Schedule II controlled substance in order to violate the statute.

The cases on which defendant relies are each distinguishable. Of those, we discuss only *State v. Russell*, 231 Or 317, 372 P2d 770 (1962), the case on which defendant places greatest reliance. In *Russell*, the Supreme Court found a material variance between an indictment that alleged theft of a heifer and the state's evidence at trial that showed theft of a steer. The decision in *Russell* hinged on the language of *former* ORS 164.380, *repealed by* Oregon Laws 1971, chapter 743, section 432, an animal theft statute that particularly listed 20 different types of livestock.[2] *Id.* at 318.

---

[2] *Former* ORS 164.380 provided, in part:

Because the state chose to prosecute the defendant under a statute that distinguished "heifer" from "steer," the court held that it was required to prove what the indictment alleged. *Id.* at 321. "Heifer" was a material allegation, because when that word was stricken, the indictment no longer stated a crime under the statute the defendant was alleged to have violated. *Id.* at 319. That is not the case here. Defendant was charged in the language of the statute. ORS 475.992(4)(b) makes no distinction between the types of controlled substances listed in Schedule II. Thus, the amendment merely substituted surplus information; it did not create a risk of variance between pleading and proof. In other words, on striking the word "cocaine," even if the word "methamphetamine" had not been substituted, the information would still have stated a crime under ORS 475.992(4)(b), which merely prohibits knowing or intentional possession of a Schedule II controlled substance. *See State v. Hunter,* 141 Or App 73, 82, 918 P2d 104, *rev den* 324 Or 78 (1996) (distinguishing *Russell* in rejecting claim of variance because ORS 167.325 does not classify animals by type but, instead, creates generic offense of animal neglect).

Because it was not essential to show the particular identity of the Schedule II substance possessed in order to sufficiently charge defendant with unlawful possession of a controlled substance, ORS 475.992(4)(b), the amended information did not alter the essential nature of the charge. Therefore, the amendment was one of form, and the trial court did not err in permitting it.

Affirmed.

---

"Any person who commits larceny by stealing, or taking with the intention of converting to his own use, any horse, gelding, mare, mule, ass, jenny or foal, bull, steer, cow, heifer, calf, hog, dog, sheep or goat or any poultry bird, including chicken, turkeys, ducks or geese * * * shall be punished upon conviction by imprisonment in the penitentiary for not more than 10 years, or by imprisonment in the county jail for not less than three months nor more than one year or by a fine of not less than $50 nor more than $1,000."