Argued and submitted October 31, 2001, reversed and remanded in part; otherwise affirmed April 3, 2003

## STATE OF OREGON,
*Respondent,*

*v.*

## MARC ROBERT SCHODROW,
*Appellant.*

## C971946CR; A107500

66 P3d 547

Shawn Wiley, Deputy Public Defender, argued the cause for appellant. With him on the brief was David E. Groom, State Public Defender.

Rolf C. Moan, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Haselton, Presiding Judge, and Linder and Wollheim, Judges.

LINDER, J.

## · **LINDER, J.**

Defendant was convicted of unlawful possession of a concealed firearm, ORS 166.250(1)(a), unlawful possession of a short-barreled firearm, ORS 166.272, and possession of a controlled substance, ORS 475.992. Defendant challenges both firearms convictions on appeal. We affirm defendant's conviction under ORS 166.272 without discussion. For the reasons set forth below, we reverse defendant's conviction for unlawful possession of a concealed firearm, ORS 166.250(1)(a), and remand.

Defendant was convicted after a trial to the court. We therefore state the facts in the light most favorable to the state. *State v. Andrews*, 174 Or App 354, 356, 27 P3d 137 (2001). On June 15, 1997, a police officer drove by defendant, who was walking in the opposite direction. The officer noted that defendant turned his head away then turned around and looked at the officer's car. The officer turned the car around, parked near defendant and asked defendant if he could speak with him. When asked about where he lived, defendant stated that he lived in Gresham and that he was going to babysit for some friends. Defendant then volunteered that he had a shotgun in a pool cue case that he was carrying. The officer opened the case and observed a shotgun that had no stock. The barrel appeared to have been cut, as well. Defendant subsequently was arrested.

At trial, a criminalist with the Oregon State Police testified that he had test fired the shotgun and found it to be operable, despite the fact that parts were missing from it. Defendant testified that he had purchased the shotgun from a man at the Gresham transit center approximately two hours before he was arrested:

> "I was approached by a guy probably five or six years older than me. He said that he needed money for his rent and that he was selling a shotgun but it wasn't working. It would need to be taken and have a stock bought for it. And he said $25. And I don't know. I didn't really see anything wrong with it. And I thought maybe Father's Day was coming up. I thought of maybe going and getting a stock for it at a gun store and taking it over to my grandfather and maybe

putting it together on Father's Day with him and giving it to him because he used to collect guns."

Defendant further testified that, when he bought the weapon, he did not remove it from the case, but looked into the case and

"saw the gun with no stock and the sliding barrel, the magazine barrel, I don't believe was in it. It was outside of the hole. And I was told that the gun was not operable. Without a stock and without the piece on the end and a spring, that if you tried to shoot the gun, it would blow up is what I was told."

After the close of the evidence, defense counsel argued to the court that the state had failed to prove that defendant "knowingly" carried a firearm concealed on his person, in violation of ORS 166.250. Specifically, defendant argued that the state had not proved that he knew the shotgun was "capable of use as a weapon," as the applicable definition of firearm in ORS 166.210(2) requires. In response, the state argued that, although it had to prove that defendant's shotgun was capable of use as a weapon, it did not have to prove that defendant *knew* that fact. The trial court agreed and found defendant guilty of unlawful possession of a concealed firearm. On appeal, the parties renew the arguments they made at trial. *See Andrews*, 174 Or App at 358-59 (defendant can preserve legal issue of what elements the state is required to prove by raising the point and obtaining a ruling on it in the course of closing arguments).

■    We begin with the relevant statutory framework. ORS 166.250 provides, in pertinent part:

"(1)   Except as otherwise provided in [specific statutes], a person commits the crime of unlawful possession of a firearm if the person knowingly:

"(a)   Carries any firearm concealed upon the person[.]"

ORS 166.210(2), in turn, provides the applicable definition of "firearm":

" 'Firearm' means a weapon, by whatever name known, which is designed to expel a projectile by the action of powder and which is readily capable of use as a weapon."[1]

---

[1] We have held that "readily capable of use as a weapon" can encompass weapons that have been rendered inoperable, such as by removal of the firing pin,

The issue of statutory construction presented in this case is whether a defendant need only knowingly carry an object that turns out to be a firearm or whether the defendant must also know that the object *is* a firearm—that is, that the object has the characteristics or qualities that cause it to be a firearm within the statutory definition.

Determining whether a culpable mental state attaches to certain elements of a crime under our criminal statutes has been a chronically vexing problem. *See generally Andrews,* 174 Or App at 361-62; *State v. Engen,* 164 Or App 591, 603, 993 P2d 161 (1999), *rev den,* 330 Or 331 (2000). The issue typically arises either because (1) the legislature fails to specify any culpable mental state for commission of a particular criminal offense,[2] or (2) the legislature prescribes a culpable mental state without specifying the element or elements to which it applies.[3] In those circumstances, the legislature has specified interpretative rules for courts to use to determine whether a culpable mental state requirement exists and, if so, which elements are subject to that culpable mental state requirement. *See generally* ORS 161.095; ORS 161.105(1); ORS 161.115(1). Frequently, those rules reduce

---

because such weapons could "be made operable in three to four minutes at a cost of $6." *State v. Gortmaker,* 60 Or App 723, 742, 655 P2d 575 (1982), *aff'd,* 295 Or 505, 668 P2d 354 (1983), *cert den,* 465 US 1066 (1984). *See also State v. Goltz,* 169 Or App 619, 622, 10 P3d 955 (2000), *rev den,* 331 Or 583 (2001) (disassembled handgun that was easily capable of reassembly was "readily capable of use as a weapon" for purposes of establishing violation of ORS 166.270).

[2] *Andrews* provides an example of the first circumstance. It involved a Portland City Code provision that made it unlawful for any person on a public street or in a public place "to carry a firearm upon his person, or in a vehicle under his control or in which he is an occupant" unless the firearm were unloaded. The ordinance specified no mental state whatsoever, and the question was whether a culpable mental state nevertheless attached to any or all of the material elements of the offense. 174 Or App at 359-65.

[3] *Engen* provides an example of the second circumstance. It involved a statute that made it "unlawful for any person knowingly or intentionally to possess a controlled substance," subject to certain exceptions. ORS 479.992(4). The statute further set out, through a series of subsections, different penalties for the offense, depending on which of several schedules contained the particular controlled substance possessed. The question in *Engen* was not whether a culpable mental state was required at all—plainly, by the statute's text, one was expressly prescribed. Rather, the question was whether a defendant had to possess a controlled substance knowing not only that it was a controlled substance, but knowing the precise type or chemical nature of the substance (e     methamphetamine versus cocaine). 164 Or App at 607-08.

to an examination of which element or elements of an offense "necessarily require[ ] a culpable mental state," which is a circular inquiry that has yielded less than consistent results. *See generally State v. Blanton*, 284 Or 591, 594-95, 588 P2d 28 (1978) (examining which elements "necessarily require[ ] a culpable mental state" introduces a "confusing appearance of circularity" in the test); *Andrews*, 174 Or App at 362 (the "patchwork of appellate decisions in this area has not been entirely consistent" (internal quotations omitted)); *Engen*, 164 Or App at 603 (same).

■     This case, however, does not require us to enter that thicket of case law. Rather, the statute defining the offense, when considered in combination with the definition of the culpable mental state that the statute specifies, provides a complete answer. A culpable mental state is expressly prescribed, and it is specifically directed to the material element of carrying a firearm.

In that regard, although we earlier quoted ORS 166.250(1), it is helpful to quote it again. The pertinent portion of it states:

"(1)   [A] person commits the crime of unlawful possession of a firearm if the person knowingly:

"(a)   Carries any firearm concealed upon the person[.]"

The statute's text is straightforward. It expressly prescribes a culpable mental state: knowingly. Thus, this is not a statute in which the legislature has been silent as to whether a culpable mental state is required at all. Additionally, the prescribed culpable mental state immediately precedes and directly modifies the prohibited act of carrying any firearm. Given the text and the structure of the statute, there is no doubt that the prescribed culpable mental state—knowingly—attaches to that element.

But the question remains: is it only the act of carrying that must be done knowingly? Or must a defendant also know the nature of what is being carried (*i.e.*, its nature as a firearm)? Considered in isolation, the statute is ambiguous. The ambiguity is a classic one described in hornbook law:

"[D]ifficulty arises from the ambiguity which frequently exists concerning what the words or phrases [in a statute prescribing a mental state] modify. What, for instance, does 'knowingly' modify in a sentence from a 'blue sky' law criminal statute punishing one who 'knowingly sells a security without a permit' from the securities commissioner? To be guilty must the seller of a security without a permit know only that what he is doing constitutes a sale, or must he also know that he has no permit to sell the security he sells? As a matter of grammar the statute is ambiguous; it is not at all clear how far down the sentence the word 'knowingly' is intended to travel—whether it modifies 'sells,' or 'sells a security,' or 'sells a security without a permit.' "

Wayne R. LaFave and Austin W. Scott, Jr., *Criminal Law* § 27, 193 (hornbook series 1972).

The ambiguity disappears, however, when the applicable definition of "knowingly" is incorporated into the statute. ORS 161.085(8) provides:

" 'Knowingly' or 'with knowledge,' when used with respect to conduct or to a circumstance described by a statute defining an offense, means that a person acts with *an awareness that the conduct of the person is of a nature so described or that a circumstance so described exists.*"

(Emphasis added.) By force of that definition, to knowingly "carry a firearm" requires more than the person's awareness that he or she is engaged in the conduct of carrying an object of some or any kind. Instead, either because carrying "a firearm" is an aspect of the nature of the conduct or a circumstance described by the statute, a person must also be aware that the object he or she is carrying is a firearm. That awareness requires, in turn, knowledge that the weapon has the characteristics of a firearm—namely, as relevant to defendant's challenge, that it is readily capable of use as a weapon. *See* ORS 166.210(2).

To conclude otherwise would render the prescribed culpable mental state a nullity and would effectively convert the crime into a strict liability offense. Under ORS 161.095(1), the "minimal requirement for criminal liability" is performance by a person of conduct that includes a "voluntary act" or failure to act. A "voluntary act" means ".a bodily movement performed consciously and includes the conscious possession or control of property." ORS 161.085(2).

Thus, even if the legislature were to have dispensed with a culpable mental state for the crime of unlawful possession of a firearm—which it expressly did not—the state would be required to prove that the defendant was carrying property consciously, even if he or she was unaware of the nature of that property being carried (*i.e.*, that it was a firearm). Necessarily, then, for the prescribed mental state of "knowingly" to add anything to the crime's definition, it must modify more than the conduct of carrying an object or property and must extend as well to the nature of the object or property carried.[4]

We therefore hold that, in a prosecution under ORS 166.250(1)(a) for carrying a firearm concealed upon a person, in addition to proving that a defendant knew that he or she was carrying an object of some kind, the state must prove the defendant's knowledge that the object had the nature or characteristics of a firearm. In light of that holding, we must determine the proper disposition of this case.

■■  Generally, when there is a failure of proof as to a material element of a crime, this court will conclude that the trial court should have granted a motion for judgment of acquittal and will reverse a conviction outright. Here, however, the situation is somewhat different. Defendant did not make a proper motion for judgment of acquittal.[5] Rather, defendant raised the issue of whether the state had to prove knowledge that the shotgun was readily capable of use as a weapon in closing argument to the trial court, a situation that is analogous to disputing the instructions that should be

---

[4] In arguing to the contrary, the state relies on our decision in *State v. Hash*, 34 Or App 281, 578 P2d 482, *rev den*, 284 Or 1 (1978), which involved a prosecution for the crime of felon in possession of a firearm. ORS 166.270 (1975). We held in *Hash* that a felon did not have to know that any firearm in his possession was capable of use as a weapon to be guilty of that crime. 34 Or App at 285. *Hash* is distinguishable, however, because the felon in possession statute did not (and still does not) expressly prescribe a culpable mental state. In other words, the felon in possession statute did not require a defendant to "knowingly" possess a firearm, and it therefore did not incorporate the requirement under ORS 161.085(8) that the state prove awareness that the conduct was of the nature described by the statute. *Hash* instead falls among the group of our cases in which we have struggled to determine when a culpable mental state is to be implied at all and, if one is implied, which elements are those that "necessarily require[ ] a culpable mental state." *See* ORS 161.095(2); ORS 161.105.

[5] At the close of the prosecution's case, defendant did make a general motion for judgment of acquittal without specifying any theory on which the state's proof was legally insufficient. Such a motion preserves no ground for challenge on appeal. *See State v. Long*, 246 Or 394, 396-97, 425 P2d 528 (1967).

given to a jury. *Andrews*, 174 Or App at 358. In any event, the evidence is disputed as to whether defendant had the requisite mental state concerning the material element of "firearm." *See generally* 187 Or App at 227-28 n 1. The error here was in the trial court's conclusion that knowledge that a gun is readily capable of use as a weapon "is not a required element in proving that someone knowingly possessed a firearm." This case, therefore, is similar to *Andrews*, where we noted that the case was "in a posture in which the trial court convicted defendant without deciding a material element for which there was proof sufficient to withstand a motion for judgment of acquittal." 174 Or App at 366. In that circumstance, the proper disposition is to reverse and remand for a new trial, *id.*, which is, in fact, the relief that defendant seeks on appeal with regard to his conviction for unlawful possession of a concealed firearm.

Reversed and remanded for new trial on conviction of unlawful possession of a concealed firearm; otherwise affirmed.